## NAT TERENCE V. THE STATE.

No. 20363.  Delivered May 17, 1939.
Rehearing Denied June 14, 1939.

The opinion states the case.

*William H. Scott,* of Houston, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

Conviction is for the offense of libel; punishment assessed is a fine of $100.00.

Appellant's main complaint is that the information, which follows the language of the complaint, is insufficient to charge him with having committed the offense of libel. Omitting the formal parts, the information reads as follows:

"That heretofore on the 4th day of November, A. D., 1938, Nat Terence with intent to injure Russell A. Bonham, did unlawfully and maliciously make, write, print, publish, sell and circulate a malicious statement of and concerning the said Russell A. Bonham, and affecting the reputation of the said Russell A. Bonham, to the tenor following:

" 'The editor of the Houstonian was threatened with death Tuesday if he gave the people any more information in regard to the record of Frank E. Mann, who is asking the voters of

Houston to elect him a member of the city council, Position 2. One Russell A. Bonham, an attorney associated with Mann, with offices in the Chronicle Building and one of his kingpins, called the editor on the telephone Tuesday about 5 o'clock in the afternoon and said in substance:

"'If you put out any more of that stuff about Frank Mann or mention him in your paper in any way, I want you to know that you will be going out the hard and rough way and you wouldn't be here any more to publish any Houstonians. I want to give you a guarantee that you will be going out the hard way and I will personally see to it that you do go out the rough way. Frank Mann has been associated with me for the past three years and when anybody talks about Frank Mann, they are talking about Russell Bonham. Frank Mann had a right to defend and deal with criminals, as that comes under the head of confidential communications. Houston is too big for you and me and again I warn you that if you print anything else about Frank Mann, I'm going to remain in Houston, but you will not be here.'

"Against the peace and dignity of the State."

If the article quoted, within and of itself, is libelous per se, then the information is sufficient. In order to be libelous per se, it must come within one of the five subdivisions of Art. 1275 P. C., which reads as follows: "The written, printed or published statement, to come within the definition of libel, must convey the idea either:

"1. That the person to whom it refers has been guilty of some penal offense; or,

"2. That he has been guilty of some act or omission which, though not a penal offense, is disgraceful to him as a member of society, and the natural consequence of which is to bring him into contempt among honorable persons; or

"3. That he has some moral vice, or physical or mental defect or disease, which renders him unfit for intercourse with respectable society, and such as should cause him to be generally avoided; or

"4. That he is notoriously of bad or infamous character; or

"5. That any person in office or a candidate therefor is dishonest and therefore unworthy of such office, or that while in office he has been guilty of some malfeasance rendering him unworthy of the place."

It is obvious that the article claimed to be libelous does not come within the purview of either subdivisions 1, 3, 4 or 5.

Therefore, we must determine whether it comes under subdivision 2. The question then is what act or omission, though not penal, does the statement made by appellant clearly and distinctly charge against Bonham, which is disgraceful to him as a member of society and the natural consequence of which is to bring him into contempt among honorable persons? The only act with which the alleged libelous article charged Bonham was that he, Bonham, called appellant over the telephone and made a conditional threat against him. A conditional threat is not denounced by our penal statutes as an offense. It was not such a threat as was intended to be executed unless appellant published some other article of and concerning Mann, which was false, infamous, etc. If no such matter was thereafter published, the threat amounted to nothing. See Strong v. State, 255 S. W. 432; Lane v. State, 276 S. W. 712.

Art. 1266, P. C. provides that the threat must be seriously made.

Art. 1267, P. C. provides that "a threat that a person will do any act merely to protect himself, or to prevent the commission of some unlawful act by another, does not come within the meaning of this chapter."

If we correctly interpret this article, it means that if appellant continued to wrongfully expose Mann that he (Bonham) would personally see to it that appellant went out of the city the hard and rough way and would not publish any more Houstonians. If this is charging any more than a threat on the part of Bonham to protect Mann against the publications of any defamatory matter, we fail to see it. Since it was not a violation of the law for Bonham to make a threat to protect Mann against any publication by appellant which was false and malicious, a publication of the threat would not bring him into disrepute among honorable persons. As long as a man acts in accordance with the law and his acts are sanctioned by law, it could hardly be disgraceful to him or bring him into disrepute.

Having reached the conclusion that the information fails to charge the offense of libel, it follows that the judgment of the trial court must be reversed and the prosecution ordered dismissed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

GRAVES, Judge.

The State has filed a motion for rehearing, merely setting forth the proposition that we erred in our original opinion herein in holding that the statement set forth in the complaint and information was not libelous. It is contended that same was libelous under subdivision 1, Art. 1275, P. C.; also that same was a threat to kill; also that same contained. a threat to kill unless certain acts were discontinued; also that said alleged statement offended against the provisions of subdivision 2 of said Art. 1275; also that a threat to kill a publisher of a newspaper unless such publisher refrained from certain acts, was a disgraceful act and would bring the maker thereof into contempt among honorable persons.

All these matters have been again carefully reviewed, as they were reviewed in our original opinion herein, and we see no reason to recede from the views originally expressed herein.

The motion is overruled.