In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00113-CR
______________________________


ELIZABETH ANN TIDWELL, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 5th Judicial District Court
Cass County, Texas
Trial Court No. 2003-F-00202


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

            Elizabeth Ann Tidwell was found guilty by the trial court of aggravated assault by threatening
John Spann, a Cass County deputy, with imminent bodily injury and using or exhibiting a deadly
weapon, a firearm. The trial court assessed her punishment at five years' confinement. On appeal,
she alleges the evidence was both legally and factually insufficient to sustain the conviction. Having
found the evidence both legally and factually sufficient, we affirm the trial court's judgment.
I.         Factual Background
            For a number of years, the Texas Child Protective Services (CPS) has interacted with Tidwell
concerning the welfare of Tidwell's children.


 On July 30, 2003, the CPS contacted the Cass County
Sheriff's Department for assistance in investigating Tidwell concerning the care of her children. Dale
Gentry, a deputy for the sheriff's office, accompanied the CPS staff person to Tidwell's residence and
found her outside with her two children. Tidwell returned inside the home, and Gentry followed
onto the porch. As Gentry was attempting to talk with Tidwell, she said she was not giving up her
children and that she had a gun and would shoot him. Gentry reported that he needed assistance, and
Spann, who was nearby, arrived a few minutes later. Spann was driving a marked police vehicle and
was wearing his uniform. Spann positioned himself to watch the back door of the house. Within
five or ten minutes, Tidwell came out the back door of the house with two children and was holding
a black revolver in her hand. Spann told her to drop the gun, and she replied, "'You better get away
from me or --' . . . 'Get the f--- away from me' . . . 'or I'll shoot you.'" Spann then backed away, and
Tidwell took the children back into the house. At the time of this incident, Gentry was in the front
of the house and did not witness this exchange between Tidwell and Spann. Sometime later,
Lieutenant Ray Copeland arrived on the scene and negotiated with Tidwell. Ultimately, Tidwell
allowed the officers to enter and search the home. Tidwell led the officers to a .22 pistol located in
a closet. No shells were found inside the pistol, and no ammunition for it was found in the house. 
Tidwell was arrested and gave a statement the following day that she thought the gun she had in her
hand was a BB gun. 
            Tidwell asserts that the evidence is legally and factually insufficient to prove she committed
the offense. In a legal sufficiency review, we view all of the evidence in a light most favorable to
the verdict and determine whether any rational trier of fact could have found the essential elements
of the crime beyond a reasonable doubt. Lacour v. State, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000)
(citing Jackson v. Virginia, 443 U.S. 307 (1979)). We resolve any inconsistencies in the evidence
in favor of the verdict. Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).
II.       Legal Sufficiency of the Evidence
            To prove the offense of aggravated assault as alleged in the indictment, the State was required
to prove Tidwell committed an assault and used or exhibited a deadly weapon during the commission
of the assault. See Tex. Pen. Code Ann. § 22.02 (Vernon Supp. 2005). An assault, as defined in
Section 22.01 of the Texas Penal Code, is committed when the actor threatens another with
imminent bodily injury. Tex. Pen. Code Ann. § 22.01(a)(2) (Vernon Supp. 2005). Tidwell attacks
the evidence as being insufficient regarding both elements: that an assault occurred and that a deadly
weapon was used or exhibited. 
            A.        Assault
            Tidwell maintains that the language attributed to her, which in essence was, "Get away or I
will shoot you," is not adequate to present a threat of imminent bodily injury. Relying on Terence
v. State, 137 Tex. Crim. 322, 128 S.W.2d 1211 (1939), and Clark v. State, 99 Tex. Crim. 73, 268
S.W. 731 (1925), Tidwell classifies this language as nothing more than a conditional threat and not
violative of the law. 
            The Terence case, in which the defendant was charged with the criminal offense of libel, is
not relevant to the present case. In Clark, the defendant's livestock had been impounded by a
neighbor. In attempting to retrieve his livestock, the defendant confronted the neighbor while
possessing a gun. While leaving, the neighbor said that he was going to turn the livestock over to
the authorities and in return, the defendant stated that, if the neighbor did that, he (the defendant)
would turn the neighbor over to the undertaker. In Clark, the court concluded that such a threat was
conditional and did not constitute an assault. A major obstacle in applying Clark is that the law in
effect in 1925, at the time of the Clark decision, was different than our law today. See Gaston v.
State, 672 S.W.2d 819, 822 (Tex. App.—Dallas 1983, no pet.). At that time, assault was defined
as: Any attempt to commit a battery or any threatening gesture showing, in itself, or by word
accompanying it an immediate intention coupled with an ability to commit a battery. See id. (citing
Tex. Pen. Code Ann. art. 1008 (1911)). The phrase "coupled with ability to commit" meant "[t]he
use of any dangerous weapon, or the semblance thereof, in an angry or threatening manner, with
intent to alarm another, and under circumstances calculated to effect that object, comes within the
meaning of an assault." See Gaston, 672 S.W.2d at 822 (citing Tex. Pen. Code Ann. art. 1013(3)
(1911)). 
            In Clark, to prove an assault, it was necessary to establish that the defendant had the ability
to commit a battery. Our law of assault by threat requires proof that one acts with intent to cause a
reasonable apprehension of imminent bodily injury. Garrett v. State, 619 S.W.2d 172, 173 (Tex.
Crim. App. [Panel Op.] 1981); Torres v. State, 905 S.W.2d 440 (Tex. App.—Fort Worth 1995, no
pet.). Since the court in Clark was operating with a definition of the crime of assault that contained
elements not required in the current statute, the conclusions of that court are not relevant to this case. 
More important for our decision today is whether Tidwell's statements and actions constituted a
threat that bodily injury was imminent. 
            The Fort Worth court has written that conditioning a threat of harm on the occurrence or
nonoccurrence of a future event does not necessarily mean that the harmful consequences threatened
are not imminent. The focus of the inquiry should be whether the threat was "imminent"—not
merely whether the threat was conditional. See Neagle v. State, 91 S.W.3d 832, 834 (Tex.
App.—Fort Worth 2002, pet. ref'd) (citing In re A.C., 48 S.W.3d 899, 904 (Tex. App.—Fort Worth
2001, pet. denied)). We agree with that rationale. For instance, it would be nonsensical to conclude
that, if a person, while using and exhibiting a deadly weapon, said, "Don't move or I will shoot," or,
"Give me the money or I will shoot," such statements are merely conditional and could not convey
a threat of imminent bodily injury. See Green v. State, 567 S.W.2d 211, 212 (Tex. Crim. App.
[Panel Op.] 1978) (In a robbery case where an imminent threat of bodily injury was required, the
statement, "If you don't give me the money, I'm going to cave your head in," was found sufficient.). 
On the other hand, threatening to kill a police officer while the defendant was handcuffed would only
constitute a threat of future harm which might occur after the defendant was released from jail, and
did not present an "imminent" threat. See Hill v. State, 844 S.W.2d 937 (Tex. App.—Eastland 1992,
no pet.). The Texas Court of Criminal Appeals has stated that the concept of imminent includes near
at hand, mediate rather than immediate, impending. See Devine v. State, 786 S.W.2d 268 (Tex.
Crim. App. 1989). 
            The gist of the offense of assault, as set out in Section 22.01(a)(2), is that one acts with intent
to cause a reasonable apprehension of imminent bodily injury (though not necessarily with intent to
inflict such harm). Garrett, 619 S.W.2d at 174. Here, Tidwell had in her possession a black
revolver and stated to Spann that, unless he left, she would shoot him. Spann was lawfully and
properly on the property for official duties associated with the Cass County Sheriff's Department. 
Even though Tidwell did not point the gun toward Spann, he testified the threat placed him in fear
of bodily harm and he backed away for his own safety. We find that Tidwell's threat caused a
reasonable apprehension by Spann of imminent bodily injury. Threats may be communicated
verbally as well as communicated by conduct. McGowan v. State, 664 S.W.2d 355, 357 (Tex. Crim.
App. 1984); Nemecek v. State, 621 S.W.2d 404 (Tex. Crim. App. [Panel Op.] 1980). Here, the threat
was by a combination of words ("Get the f--- away from me . . . or I"ll shoot you") as well as by
conduct (the use of a deadly weapon). The mere presence of a deadly weapon, under proper
circumstances, can be enough to instill fear and threaten a person with bodily injury. Gaston, 672
S.W.2d at 821 (conviction affirmed even though defendant made no physical motion to employ gun,
nor verbally threatened victim). We find the evidence to be legally sufficient to allow a rational trier
of fact to find Tidwell guilty of the assault beyond a reasonable doubt. 
            B.        Deadly Weapon
            Tidwell also argues that the evidence was insufficient to establish that she used a deadly
weapon because, she alleges, the gun was not loaded. In her voluntary statement given to the deputy,
Tidwell stated she thought the gun was a BB gun. In her trial testimony, she denied threatening the
deputy and said the gun was on the table in the house. She further testified that she never had the
gun in her possession while talking to the deputy. Tidwell admitted she later hid the gun in the
closet. As previously discussed, a search of the premises revealed a .22 handgun containing no
shells, nor was any ammunition for the .22 revolver found in the house. From this information,
Tidwell alleges that the gun was not loaded at the time of the alleged threat and therefore could not
serve as a deadly weapon. She cites Ogren v. State, 447 S.W.2d 682 (Tex. Crim. App. 1969), for
the proposition that there is a presumption that a pistol used in an assault is loaded absent proof to
the contrary.
            We find that the weapon used is classified as a deadly weapon per se or by design and,
therefore, no further evidence is necessary to prove the weapon is capable of causing death or serious
bodily injury. As Judge Meyers has explained, our law now has two discrete hemispheres of deadly
weapons. The first is composed of those weapons that are firearms "or anything manifestly designed,
made, or adapted for the purpose of inflicting death or serious bodily injury." Tex. Pen. Code Ann.
§ 1.07(a)(17) (Vernon Supp. 2005). If the State alleges and proves that a weapon falls within this
category, "it is not necessary to verify that the object was really capable of causing death." Adame
v. State, 69 S.W.3d 581, 583 (Tex. Crim. App. 2002) (Meyers, J., concurring) (citing Thomas v.
State, 821 S.W.d 616, 620 (Tex. Crim. App. 1991); see also Wright v. State, 582 S.W.2d 845, 847
(Tex. Crim. App. 1979); Grant v. State, 33 S.W.3d 875, 881 (Tex. App.—Houston [14th Dist.] 2000,
pet. ref'd) (no requirement that firearm be loaded to support deadly weapon finding)).
            The second method that may be used to prove a deadly weapon is that the implement was "in
the manner of its use or intended use capable of causing death or serious bodily injury." Tex. Pen.
Code Ann. § 1.07(a)(17)(B). If it is alleged that an instrument is deadly because of the manner of
its use, then there is a requirement that further proof be presented that the weapon as used was
deadly. However, the evidence is fully adequate if it shows that the weapon is deadly by design,
rather than by usage. Thomas, 821 S.W.2d at 620.
            Here, Spann identified the weapon as a black revolver. Tidwell admits she hid a gun in the
closet; she showed the officers where it was located; a search of the closet revealed a .22 revolver;
and no BB gun was found on the premises. Spann testified that the revolver Tidwell used to threaten
him did not appear to be a BB gun. The .22 revolver was introduced into evidence and identified
as a firearm. Gentry testified that the .22 was the only handgun found in the house, and it was
consistent with Spann's description of the firearm. We hold that the trial court had ample evidence
to conclude that the .22 revolver introduced into evidence was the firearm Tidwell used and
exhibited while threatening Spann, that it was a deadly weapon by design or per se, and therefore the
State had no further obligation to prove that the deadly weapon was loaded. 
III.      Factual Sufficiency of the Evidence
            In a factual sufficiency review, we must review all of the evidence in a neutral light and
determine whether the evidence supporting guilt is too weak to support the finding of guilt beyond
a reasonable doubt or whether the evidence contrary to the verdict is so strong that the beyond a
reasonable doubt burden of proof could not have been met. Zuniga v. State, 144 S.W.3d 477, 486
(Tex. Crim. App. 2004); Harvey v. State, 173 S.W.3d 841 (Tex. App.—Texarkana 2005, no pet.). 
We will review the evidence that appears to be contrary to the verdict. 
            Tidwell testified that she did not threaten to shoot the officers. She admits she used colorful
language in insisting that the officers leave. She further denies that she possessed any type of
weapon until she went back into the house, after her conversation with Spann, but testified that she
did pick up the handgun and hide it in the closet because she was "freaking." Spann admitted that
she never pointed the gun directly at him and that she could not have discharged the weapon at the
same time she was holding the hand of a child. It was admitted that Tidwell was of limited
intelligence and could not read or write. 
            These facts created some conflicts in the evidence for the trial court to resolve. However,
we find nothing in the evidence to be so contrary to the verdict that would prevent the trial court
from concluding Tidwell was guilty of the offense beyond a reasonable doubt. 
            We affirm the judgment of the trial court. 
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          February 23, 2006
Date Decided:             March 1, 2006

Publish