Affirmed and Opinion filed December 21, 2006














Affirmed and Opinion filed December 21, 2006.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-05-01153-CR

____________

 

CHARLES ANTHONY YOUNG, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 





 

On Appeal from the 177th
District Court

Harris County,
Texas

Trial Court Cause No. 1002572

 





 

O P I N I O N

 

Appellant, Charles Anthony Young, appeals from his conviction
for aggravated robbery.  After a jury found him guilty, the trial court
sentenced him to 45 years in prison.  In six issues, appellant contends
that (1) the trial court erred in refusing to grant a mistrial when the
prosecutor shifted the burden of proof during questioning of a witness; (2) the
trial court erred in admitting hearsay; (3) the trial court erred in admitting
evidence of an extraneous offense; (4) the evidence was factually insufficient
to support the conviction; (5) the evidence was legally insufficient to support
the conviction because there was inadequate proof of the weapon used during the
commission of the offense; and (6) the evidence was legally insufficient to
support the conviction because there was no evidence that anything was taken
during commission of the offense or that appellant possessed the intent to
deprive the complainant of property.  We affirm.

I.  Background

The complainant, S.C., testified at trial that on July 13, 2004,
she was twelve years old.  That morning, she was alone in the mobile home
where she lived with her mother and step-father.  While she was taking a
shower, she heard her dog bark.  After she got dressed, she looked out
front and saw an older Cadillac drive by.  She thought it may have been
gold in color but was not sure.  A short time later, while she was
preparing her lunch in the kitchen, she heard a knock on the front door. 
She did not answer it under prior instructions from her mother, but the knock
came again and then someone began banging on the door.  It scared
her.  Suddenly, a gun broke through the window of the door and fell on the
floor.  She ran to the gun and picked it up.  She tried to fire it to
scare away whoever was outside, but the gun did not discharge.  She
described the gun as a black and silver pistol about five to six inches
long.  She said it felt light when she picked it up, but it felt like a
real gun.  The door burst open, and the complainant dropped the gun. 
She ran back towards the kitchen, but an Hispanic man
entered the home, caught her, forced her to her knees, and dragged her to a
couch.  He then picked her up off the couch and put her on the floor on
her knees.  There, he bound her hands behind her back and put a blanket
over her head.  She felt something through the blanket that felt like he
put a gun to her head.  She said it felt metallic and heavy and was shaped
like a gun.  She told him that she had asthma and said, AYou don=t want to hurt me
do you?@  She said
that she did this, even though she does not have asthma, because she knew that
she would have to identify the intruders later, and she needed to get a good
look at them.  The man took the blanket off her head.

 

In total, three men entered the home, two Hispanic men and
one black man, whom the complainant identified as appellant.  Each man had
a gun, and each wore what complainant described as a Asheriff=s jacket.@  When they first entered, one of them
said AWhere is the drugs?  Where is the
drugs?@  To which complainant
responded: AWe don=t have any drugs
here.  You=ve got the wrong
house.@  The men then
searched the premises, with appellant searching through drawers in the
kitchen.  She said that she got a good look at appellant=s face when he was
ten feet or less away from her, even though she was not wearing her
prescription glasses at the time.  She described his clothes and stated
that he had a gun in his back pocket.  She said the handle looked the same
as the one that had come in through the window, and it made her more afraid to
see it.  Complainant asked appellant what they were going to do to her and
if they were going to hurt her, and he responded that no one was going to hurt
her.  She then asked if they were leaving and if they were coming back,
and one of the men responded that they were going outside to Atalk to our deputy.@  The men left, and a short time later,
the complainant managed to unbind her hands and run for help.

Officer Eddie Wilkerson of the Pasadena Police Department
testified that on July 13, 2004, he was dispatched to the scene of a reported
home invasion in a mobile home park.  At the scene, he spoke to
complainant, who was a little bit distraught and visibly shaken but had begun
to calm down.  Complainant handed him a black plastic tie wrap, which she
said had been used to bind her hands.  In response to Wilkerson=s questioning,
complainant described for him the course of events in similar detail to how she
testified at trial.  Wilkerson said that complainant described the black
male intruder as A[a]bout 5'10" and around 32 years
old.@  She
described the gun that came through the window as Alight@ and Amaybe even a toy.@  She also
stated that she picked it up and tried to fire it to scare away whoever was
outside, but the gun only clicked.  She stated that the intruders were all
wearing blue jackets that had gold lettering on the back, reading Asheriff.@  Wilkerson
further stated that upon arrival, he observed blood at the front door where the
glass was broken as well as in the kitchen area.  He also found a for sale
sign by the front door.

 

Detective Kirk Bonsal of the
Pasadena Police Department testified that on July 13, 2004, he responded to the
scene of a reported home invasion.  Upon arrival, he spoke with Officer
Wilkerson and surveyed the scene with the crime scene officer.  Detective Bonsal also saw a for sale sign at the scene, which he was
told did not belong there.  He said that the front of the sign read AFor sale@ and A>92 Cadillac,@ and had a telephone number on it.  Bonsal then spoke with complainant.  It was then about
45 to 50 minutes after the originating call was received.  He said that
she was still visibly shaken and upset and that it looked like she had been
crying.  She was not crying at the time he spoke to her.  Her
description of events to him was similar to her trial testimony and that of
Officer Wilkerson.  Bonsal additionally
testified that detectives traced the phone number on the for sale sign to a
former owner of a silver or grayish-silver 1992 Cadillac.  Some time
later, appellant was pulled over by another officer while driving the vehicle
in question.  Bonsal then placed a photograph of
appellant in a photographic lineup, which he presented to complainant. 
She identified appellant as the black male intruder.  She had seen three
prior photo spreads without having identified anyone as being involved in the
robbery.  She stated that one of the photographs in an earlier lineup
looked like one of the intruders, but she could not be sure.

Officer Brian Diettrich of the
Houston Police Department testified that he stopped appellant because the gray
Cadillac he was driving had no front license plate.  When Diettrich ran the license number for the vehicle, he
discovered that it was wanted in relation to an aggravated robbery.  After
detaining appellant, Diettrich inventoried the
vehicle.  In a black zippered bag in the trunk, he found a loaded .22
caliber pistol along with several papers bearing appellant=s name. 
Defense counsel objected to admission of the pistol and Diettrich=s testimony
regarding the pistol as being irrelevant and unduly prejudicial.

 

Officer Larry Jaramillo of the Pasadena Police Department
testified regarding the crime scene investigation conducted at the scene of the
robbery.  During cross-examination, defense counsel asked Jaramillo about
the collection of blood samples at the scene.  In response, he testified
that blood samples were taken and analyzed at the crime lab, but the results
did not implicate appellant.  During re-direct examination, the prosecutor
elicited from Jaramillo that police officers and crime lab personnel were
subject to subpoena by defense counsel, so that if a defense attorney wanted to
call the person who tested blood samples to determine the source, the attorney
could have done so.  Defense counsel objected on relevance and speculation
grounds.  Later, after the jury was removed for a break, defense counsel
moved for a mistrial on the basis that the prosecutor=s questions had
shifted the burden of proof.  The trial court denied the motion.

At the close of evidence, the jury found appellant guilty
of aggravated robbery.  He pleaded true to an enhancement paragraph, and
the trial court sentenced him to 45 years in prison.

II.  Discussion

A.  Burden of Proof

In his first issue, appellant contends that the trial court
erred in refusing to grant a mistrial when the prosecutor allegedly shifted the
burden of proof while questioning Officer Jaramillo regarding subpoena
powers.  In a criminal prosecution, the State has the burden of proving
all elements of the charged offense beyond a reasonable doubt.  See,
e.g., O'Brien v. State, 154 S.W.3d 908, 909‑10 (Tex. App.CDallas 2005, no pet.).  Appellant argues
that by questioning Jaramillo on defense counsel=s right to
subpoena police officers and crime lab personnel, the prosecutor suggested that
the defense had a burden to bring forth evidence exonerating appellant.

 

Generally, as a prerequisite to bringing alleged error on
appeal, a defendant must have preserved the alleged error in the trial
court.  See Tex. R. App. P. 33.1; Harrison v.
State, 187 S.W.3d 429, 433 (Tex.
Crim. App. 2005).  In order
to preserve alleged error, a defendant must usually make an objection, and
pursue the issue until the court issues an adverse ruling.  Tucker v.
State, 990 S.W.2d 261, 262 (Tex. Crim. App.
1999).  If the court sustains the objection, the defendant should request
a curative instruction; if the judge gives the requested instruction, the
defendant should request a mistrial.  Schumacher v. State, 72
S.W.3d 43, 47 (Tex. App.CTexarkana 2001, pet. ref=d) (citing Nethery v. State, 692 S.W.2d 686, 701 (Tex. Crim. App. 1985)).  Here, defense counsel objected as
to relevance and speculation when the prosecutor asked the questions related to
subpoena powers but did not raise the burden-shifting argument.  Later,
when the court ordered a brief recess in the proceedings, defense counsel moved
for a mistrial on the burden-shifting argument without ever having objected on
that ground or having requested a curative instruction.  Thus, defense
counsel failed to preserve the argument for appeal.  Cf.
McLendon v. State,
167 S.W.3d 503, 510 (Tex.
App.CHouston [14th Dist.]
2005, no pet.) (holding that
defendant=s burden-shifting objection in trial court did not
preserve argument regarding prosecutor=s comment on
defendant=s failure to testify).

Appellant asserts that a shift in the burden of proof
constitutes fundamental error and therefore requires no objection, citing Blue
v. State, 41 S.W.3d 129 (Tex. Crim. App.
2000).  The Blue case involved a trial judge=s comments that Avitiated the presumption
of innocence,@ resulting in
fundamental error that required no objection.  41 S.W.3d at 132-33; see
also Gordon v. State, 191 S.W.3d 721, 726 (Tex. App.CHouston
[14th Dist.] 2006, no pet.) (explaining that a trial
court=s inappropriate
comments may or may not constitute fundamental error requiring an
objection).  In the present case, the trial court explained the State=s burden of proof
during voir dire and specifically explained that the
defense did not have to offer any proof.  The prosecutor echoed this
explanation in his voir dire statements.  The
jury charge also placed the burden of proof squarely on the State.  In
light of these repeated proper statements of the burden of proof, the
prosecutor=s alleged burden-shifting statements did not
constitute fundamental error.  Cf. Beltran v. State, 99 S.W.3d 807,
811-12 (Tex. App.CHouston [14th Dist.]
2003, pet. ref=d) (holding prosecutor=s injection of
personal opinion statements did not constitute fundamental error). 
Appellant=s first issue is overruled.

B.  Hearsay

 

In his second issue, appellant contends that the trial
court erred in admitting the hearsay testimony of Detective Bonsal. 
A>Hearsay= is a statement,
other than one made by the declarant while testifying
at the trial or hearing, offered in evidence to prove the truth of the matter
asserted.@  Tex. R.
Evid. 801(d).  Hearsay testimony is not
admissible unless it falls under one of several exceptions.  Id. 802, 803, 804.  A trial court=s ruling on
admissibility under a hearsay exception will not be reversed unless the trial
court abused its discretion.  Zuliani v. State, 97 S.W.3d 589, 595 (Tex. Crim. App.
2003).

Appellant specifically complains that during his testimony
Detective Bonsal recounted statements made to him by
complainant after the robbery.  The trial court expressly permitted this
testimony under the Aexcited utterance@ exception to the
hearsay rule.  Tex. R. Evid. 803(2).  An Aexcited utterance@ is A[a] statement
relating to a startling event or condition made while the declarant
was under the stress of excitement caused by the event or condition.@  Id. 
Appellant does not dispute that the home invasion suffered by complainant was a
very startling event that caused her considerable stress and excitement. 
He contends, however, that by the time Detective Bonsal
interviewed complainant, she had significantly calmed down from the
experience.  Indeed, the critical determination is whether the declarant was still dominated by the emotions, excitement,
fear, or pain of the event or condition at the time of the statement.  Zuliani, 97 S.W.3d at 595. 
Although a court may take into consideration the time elapsed between the event
and the statements and whether the statements were volunteered or in response
to questioning, such factors are not dispositive. 
Id. at 594-95.

 

Here, Officer Wilkerson, who spoke to complainant prior to Bonsal=s interview of her, stated that complainant
was a little bit distraught and visibly shaken but had begun to calm
down.  Bonsal testified that he spoke with
complainant about 45 to 50 minutes after the originating call was received, and
at that time, she was still visibly shaken and upset, and it looked like she
had been crying.  Although Wilkerson=s testimony
includes the suggestion that complainant had begun to calm down, the totality
of Wilkerson=s and Bonsal=s testimony,
coupled with the severity of the startling event, was sufficient for the trial
court to conclude that complainant was still dominated by the emotions,
excitement, fear, or pain of the event at the time of Bonsal=s interview. 
See id. at 596 (holding that record supported trial court=s finding that
statements made twenty hours after startling event and in response to
questioning were excited utterances); Oveal
v. State, 164 S.W.3d 735, 741 (Tex. App.CHouston
[14th Dist.] 2005, pet. ref=d) (holding that record supported finding
that statements made Aone to two hours@ after startling
events were excited utterances given declarant=s demeanor at time
statements were made); Ross v. State, 154 S.W.3d 804, 811 (Tex. App.CHouston [14th Dist.] 2004, pet. ref=d) (holding
statements given Aa few hours@ after startling
event were excited utterances considering extreme nature of the event). 
Accordingly, we overrule appellant=s second issue.

C.  Relevance

In his third issue, appellant contends that the trial court
erred in admitting evidence that police found a pistol in the trunk of his
vehicle when they arrested him.  Specifically, appellant argues that the
evidence (1) constituted inadmissible evidence of an extraneous offense, (2)
was irrelevant, and (3) was more prejudicial than probative.  Evidence is
deemed relevant if it has Aany tendency to make
the existence of any fact that is of consequence to the determination of the
action more probable or less probable than it would be without the evidence.@  Tex. R. Evid. 401.  Relevant
evidence is generally admissible unless Aits probative value
is substantially outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading the jury, or by considerations of undue delay, or
needless presentation of cumulative evidence.@  Id.
402, 403.  AEvidence of other crimes,
wrongs or acts is not admissible to prove the character of a person in order to
show action in conformity therewith.  It may, however, be admissible for
other purposes, such as proof of motive, opportunity, intent, preparation,
plan, knowledge, identity, or absence of mistake or accident . . . .@  Id. 404.  A trial court=s decision on the
admissibility of evidence is reviewed under an abuse of discretion
standard.  McDonald v. State, 179 S.W.3d 571, 576
(Tex. Crim. App. 2005).

 

We begin by noting that the extraneous offense in question,
felon in possession of a firearm, was apparently never presented to the
jury.  Appellant points to no place in the record where
his prior record was discussed during the guilt/innocence stage. 
Further, Officer Diettrich testified on
cross-examination that the best and safest place for a citizen to transport a
firearm is in the trunk.  See Goldberg v. State, 95 S.W.3d 345, 367
(Tex. App.CHouston [1st Dist.]
2002, pet. ref=d) (considering prejudicial nature of evidence of
knife possession in light of fact jury was never told possession of knife was
illegal).  Thus, we consider appellant=s arguments
concerning possession of the firearm in light of the fact that the jury was
never told such possession was illegal.

Appellant asserts that the evidence related to the gun was
irrelevant because the State could not show any connection between the gun and
the robbery charged.  See Alanis v. State,
891 S.W.2d 737, 740-41 (Tex. App.CHouston
[1st Dist.] 1994, pet. ref=d) (holding trial court erred in admitting
firearm found on defendant when arrested on murder charge where no connection
was established between the firearm and the murder weapon and firearm was
admitted only to show propensity for dangerousness).  Although complainant
did not specifically identify the pistol found in appellant=s vehicle as one
used during the robbery, her description of the pistols used during the robbery
generally matched the pistol found in appellant=s vehicle. 
It is additionally noteworthy that the weapon was found inside a vehicle that
closely matched complainant=s description of a vehicle on the scene at
the time of the robbery and which was tied to the robbery by way of a for sale
sign found at the scene.  Thus, the State did establish some degree of
connection between the pistol found in appellant=s vehicle and the
pistol used in the robbery.  See Goldberg, 95 S.W.3d at 366
(holding evidence that defendant possessed knives when arrested was relevant in
murder trial where coroner testified murder weapon was probably a knife); Moss
v. State, 75 S.W.3d 132, 141 (Tex. App.CSan
Antonio 2002, pet. ref=d) (holding evidence that various weapons
were discovered in apartment where defendant was arrested was relevant to
aggravated robbery charge).  Appellant=s possession of
the pistol therefore makes the existence of the facts that he committed the
robbery and that a weapon was used during the robbery more probable.  Accordingly,
the evidence regarding the pistol was relevant, and
appellant=s second argument is without merit.

 

We next consider whether admission of the evidence was
unfairly prejudicial to appellant.  AUnfair prejudice,@ of course, cannot mean just that the
evidence injures the appellant=s case, such being the State=s central
objective in offering evidence; rather, it refers to an undue tendency to
suggest decision on an improper basis, commonly, though not necessarily, an
emotional one.  Rogers
v. State, 991 S.W.2d 263, 266 (Tex. Crim. App.
1999).  Appellant insists that the pistol evidence was unfairly
prejudicial because it suggested to the jury that he was a bad person, was in
the habit of carrying a weapon, and might have had a weapon during the robbery. 
While the strength of the evidence was somewhat muted by (1) the fact that
complainant did not specifically identify the weapon as one used in the robbery
and (2) the two-month delay between the robbery and the finding of the weapon
in appellant=s vehicle, we believe that the probative strength of
the evidence as discussed above was sufficient to bring the issue of unfair
prejudice within the realm of reasonable disagreement.  Accordingly, we
will not disturb the trial court=s application of
its discretion.  See Oprean v. State, 201 S.W.3d 724, 726 (Tex.
Crim. App. 2006).  Appellant=s third argument
is without merit.  We overrule appellant=s third issue.

D.  Sufficiency of the Evidence

In his fourth, fifth, and sixth issues, appellant
challenges the legal and factual sufficiency of the evidence to sustain his
conviction.  In addressing these sufficiency challenges, we utilize the
well-established standards of review.  See King v.
State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000)
(legal sufficiency standards); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000) (factual sufficiency standards). 
We will first address appellant=s legal sufficiency claims.

1.  Legal SufficiencyCWeapons

 

In his fifth issue, appellant contends that the evidence
was legally insufficient to support his conviction because there was inadequate
proof of the weapon used during the commission of the offense.  A person
commits aggravated robbery if, among other possibilities, he or she uses or
exhibits a deadly weapon during the course of a robbery.  Tex. Penal Code Ann. ' 29.03(a) (Vernon 2003). 
The Texas Penal Code lists two categories of Adeadly weapons.@  Id.
' 1.07 (Vernon
Supp. 2006); Robertson v. State, 163 S.W.3d 730, 732 (Tex. Crim. App. 2005).  The first category is comprised of
those instruments designed to be deadly weapons, including Aa firearm or
anything manifestly designed, made, or adapted for the purpose of inflicting
death or serious bodily injury.@  Tex.
Penal Code Ann. ' 1.07(a)(17)(A). 
The second category is comprised of those instruments whose use transforms them
into deadly weapons, including Aanything that in the
manner of its use or intended use is capable of causing death or serious bodily
injury.@  Id. '
1.07(a)(17)(B).  Here, the indictment specifically charged that appellant
used and exhibited a firearm while committing robbery.  The jury charge
further instructed the jury under the law of parties.  Thus, the State had
the burden to prove beyond a reasonable doubt that appellant, or someone that
he was criminally responsible for, used and exhibited a firearm during the
robbery.  See Thomas v. State, 821 S.W.2d 616,
620 (Tex. Crim. App. 1991); Tidwell v. State,
187 S.W.3d 771, 775-76 (Tex. App.CTexarkana
2006, pet. stricken).

Complainant testified that after someone began banging on
the door of her home, a gun burst through the window and landed on the
floor.  She described the gun as a black and silver pistol about five to
six inches long and said that although it felt light when she picked it up, it
felt like a real gun.  She further stated that each of the three men who
invaded her home was carrying a gun and that appellant=s gun had the same
type of handle as the gun that came in through the window.  Additionally,
Officer Diettrich testified that when he arrested
appellant, he found a firearm in the trunk of appellant=s vehicle. 
The firearm generally matched complainant=s description of
the gun that burst through the window.  Appellant=s vehicle was also
connected to the robbery through the testimony of complainant and Detective Bonsal.  While it is true that (1) complainant did not
specifically testify that the firearm recovered from appellant=s vehicle was used
in the robbery, and (2) Officer Wilkerson testified that complainant told him
that the gun Afelt light and to her
maybe even a toy,@ these were matters for
the jury to consider and do not in and of themselves render the evidence
legally insufficient. Davis v. State, 195 S.W.3d 311, 320 (Tex. App.CHouston
[14th Dist.] 2006, no pet.) (AWe presume that any
conflicting inferences from the evidence were resolved by the jury in favor of
the prosecution, and we defer to that resolution.@).

 

Appellant is correct that the term Agun@ is a more general
term than Afirearm@ because it
encompasses weapons such as BB guns and pellet guns, whereas Afirearm@ does not.  See Williams v. State, 980 S.W.2d 222, 225 (Tex. App.CHouston [14th Dist.] 1998, pet. ref=d). 
Thus, there generally needs to be something more than just testimony that a
defendant had a Agun@ to prove that a
defendant had a Afirearm.@  See id. 
Here, although complainant did repeatedly use the term Agun@ to describe the
weapons possessed by the three men who invaded her home, she also stated that
the gun that she picked up felt like a real gun, and she said that one of the
men put a heavy, metal gun to her head.  Additionally, there was evidence
that appellant later had in his possession a weapon generally fitting
complainant=s description of the gun she picked up.  See
id. (finding evidence was legally sufficient to support firearm finding
where complainant testified that the weapon was a Ablack, metal-like gun,@ was Asquare at the front
where the bullets come out,@ and was similar to a handgun exhibited at
trial).  We find that this evidence was legally sufficient to support the
finding that a firearm was used or exhibited during the robbery by appellant or
someone for whom he was criminally responsible.  See Thomas, 821 S.W.2d at 620; Tidwell, 187 S.W.3d at
775-76.  Accordingly, we overrule appellant=s fifth issue.

2.  Legal SufficiencyCIntent
to Deprive

In his sixth issue, appellant contends that the evidence
was legally insufficient to support his conviction because there was no evidence
that anything was taken during commission of the offense or that appellant
possessed the intent to deprive the complainant of property.  Actual
commission of theft, however, is not a prerequisite to the commission of
robbery.  King v. State, 157 S.W.3d 873, 874 (Tex. App.CHouston [14th Dist.] 2005, pet. ref=d). 
Furthermore, an intent to steal may be inferred from a defendant=s own
conduct.  Id.

 

Appellant points out that (1) no property was taken from
the home, (2) there was no indication the family kept drugs at the home, and
(3) complainant told the men that they were in the wrong house.  However,
none of these facts contradicts complainant=s testimony that
three men burst into the mobile home where she lived, bound her hands, demanded
to know where drugs were being kept, and searched through the home.  The
clear implication from this testimony was that the intruders intended to remove
property from the home.[1] 
See. e.g., Butler v. State, 769 S.W.2d 234, 240
(Tex. Crim. App. 1989) (holding that intent to steal
was inferable from the fact that defendant entered a cab, executed the driver,
and ransacked the pocket of the decedent).  Thus, the evidence was legally
sufficient to support the jury=s finding on the intent element.  We
overrule appellant=s sixth issue.

3.  Factual Sufficiency

 

In his fourth issue, appellant contends that the evidence
was factually insufficient to support the judgment.  Appellant asserts
that the State=s entire case rested on the for sale sign found at the
scene.  However, the sign, which indeed resulted in police identification
of appellant as a suspect, was a minor piece of evidence compared to the
eyewitness identification of appellant by complainant.  Appellant
additionally suggests that complainant=s identification
of him as one of the robbers was unreliable because (1) she stated that another
person in an earlier photo array Alooked like@ one of the
intruders, (2) her physical description of the black male robber immediately
after the incident did not match appellant=s physical
characteristics, and (3) complainant had prescription glasses but was not
wearing them at the time of the robbery.  Regarding the first assertion,
complainant=s statement that someone in an earlier array Alooked like@ one of the
intruders may well have been an accurate statement and does not minimize the
impact of complainant=s subsequent positive and unequivocal
identifications of appellant both in a photo array and in court.  Second,
appellant is correct that complainant=s physical
description of the black male intruder, as related by Officer Wilkerson, does
not exactly match appellant=s physical characteristics as they appear
on a jail card introduced into evidence.  Complainant apparently told
Wilkerson that the intruder was about 5'10" tall, weighed approximately
200 pounds, and was around 32 years old.  The jail card identified
appellant as 6' tall, 180 pounds, and 40 years old at the time of the offense.[2] 
These discrepanciesCtwo inches, twenty
pounds, and eight yearsCcould have been
considered by the jury in assessing Wilkerson=s and complainant=s credibility, but
they do not necessarily render the identification unreliable.  See
Moreno v. State, 195 S.W.3d 321, 325 (Tex. App.CHouston
[14th Dist.] 2006, pet. ref=d) (AThe jury, as the trier of fact, is the sole judge of the credibility of the
witnesses and of the strength of the evidence.@). 
Third, although the jury may well have considered the fact that complainant was
not wearing her glasses when she observed the intruders, complainant was quite
definite in her testimony that appellant was close enough to her for her to get
a clear look at him.  She was also unequivocal in her identification of
appellant.  Thus, the issue was one for the jury in its role as judge of
witness credibility.  See id.  The evidence was factually
sufficient to support the conviction.  We overrule appellant=s fourth issue.

We affirm the trial court=s judgment.

 

 

 

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment rendered
and Opinion filed December 21, 2006.

Panel consists of
Chief Justice Hedges and Justices Yates and Seymore.

Do Not Publish C Tex. R. App. P.
47.2(b).














[1]  As mentioned, the jury was charged under the
law of parties; thus, appellant could have been found guilty even if he himself
did not demand to know where the drugs were.  Complainant did indicate
that appellant searched the premises.





[2]  Interestingly, earlier jail cards also admitted
into evidence during the punishment phase show appellant as being 5'9" or
5'10" tall.