

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-08-00055-CR

_____

MALCOLM GEORGE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 114th Judicial District Court
Smith County, Texas
Trial Court No. 114-2211-07

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

After a bench trial, Malcolm George was orally sentenced to confinement for thirty-five years for aggravated assault based on a threat to use a deadly weapon against Stephanie Veasey and her seventeen-year-old son, Jonathan Veasey.[1] George contends the evidence was legally and factually insufficient to support his conviction. After a careful review of the evidence, we affirm George's conviction, but reform the written judgment assessing two life sentences to conform with the oral judgment pronounced at trial.[2]

## I.    Factual Background

George dated Stephanie and lived in her home along with her three children. One morning, George went to work in the yard placing bricks around the flowerbeds. He discovered that the aid of a weedeater was needed during this task. As George tried to grab the weedeater, it fell apart. Because he felt that Stephanie's oldest son had purposefully taken apart the weedeater, George became angry and marched into the house in a rampage. He opened and slammed doors and destroyed objects in the house by kicking them. He woke Stephanie by pacing back and forth between the kitchen and bedroom and yelling at her to find her oldest son another place to live.

---

[1]The indictment in this case was for the assault against Jonathan, Stephanie's middle son. George was also convicted of aggravated assault of Stephanie, and assessed a concurrent thirty-five-year sentence in a companion case which we have decided today under cause number 06-08-00056-CR. Since these assaults originated during one time period, the facts concerning each charge will be discussed in this opinion.

[2]This case has been transferred to this Court as part of the Texas Supreme Court's docket equalization program.

A high chair in the kitchen shattered after George threw it to the ground. George picked up the three-and-a-half to four-foot metal high-chair leg "like he was going to hit [Stephanie] with it." He threatened Stephanie from the kitchen stating that he "was going to bash her face in with . . . that pole," while waving the chair leg. When threatening Stephanie, George remained three or four yards away from her and never came close enough to actually hit her. Stephanie remained in bed for the duration of the incident. However, she testified she felt as though George might hit her. Although recanted, Stephanie at one point indicated she felt her life was at stake. Jonathan witnessed the incident and described it as "life threatening."

Still holding the chair leg, George told Jonathan to go to his room and threatened to hit him with the leg by stating, "if you call [the police], I guarantee that you'll be down—down or dead before they get here." Jonathan testified that he was "very scared" and that, as George threatened him, he "thought that [he] was going to be gone too." Trying to defuse the situation, Stephanie got into her car, left the house, and called the police. After she left, George asked Jonathan to call her and warn her that the big screen television would be broken if she did not return. George waited outside. When Stephanie returned, George picked up a brick and began running toward the car. He threw Stephanie's cell phone out of the window, said he knew she had called the police, and asked her to help him pack. The police arrived as they were packing George's belongings into the car and arrested him for aggravated assault.

Police officer James Turner testified at trial. He confirmed Jonathan's statement that George threatened to bash his mother's face in and threatened Jonathan that, if he called the police, he would be dead before they arrived. Turner also testified that the chair leg was capable of causing serious bodily injury or death.

## II.    The Evidence Is Legally Sufficient to Support George's Conviction

When conducting a legal sufficiency analysis, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Clewis v. State*, 922 S.W.2d 126, 132–33 (Tex. Crim. App. 1996). This standard serves as a tool to determine whether there is a fact issue at all. *Clewis*, 922 S.W.2d at 133. In other words, if the evidence is insufficient under the *Jackson* standard, we must render a judgment of acquittal. *Id.* However, if the *Jackson* standard is met, we must give full play to the fact-finder's responsibility to weigh the evidence, resolve conflicts in the testimony, and draw reasonable inferences from basic facts. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); *Clewis*, 922 S.W.2d at 133; *Bottenfield v. State*, 77 S.W.3d 349, 354 (Tex. App.—Fort Worth 2002, pet. ref'd) (citing *Jackson*, 443 U.S. at 319).

The State is not required to prove the ability to commit battery for a defendant to be convicted of assault. *Miller v. State*, 741 S.W.2d 501, 503 (Tex. App.—Corpus Christi 1987, pet. ref'd) (conviction affirmed even though victim was out of range of shotgun). Instead, one manner

4

of committing aggravated assault with a deadly weapon requires proof of: 1) intentionally or knowingly threatening another with imminent bodily injury; and 2) using or exhibiting a deadly weapon during the commission of the assault. TEX. PENAL CODE ANN. §§ 22.01(a)(2); 22.02(a)(2) (Vernon Supp. 2008). While the question of whether the defendant's conduct produced fear is relevant, the crucial inquiry is "whether the assailant acted in such a manner as would under the circumstances portend an immediate threat of danger to a person of reasonable sensibility." *Olivas v. State*, 203 S.W.3d 341, 347 (Tex. Crim. App. 2006) (citing *Anthony v. United States*, 361 A.2d 202, 206 (D.C. 1976)); *see also Chapman v. State*, 78 Ala. 463, 465 (Ala. 1885).

In some circumstances, the mere presence of a deadly weapon can be enough to instill fear and threaten a person with bodily injury. *De Leon v. State*, 865 S.W.2d 139, 142 (Tex. App.—Corpus Christi 1993, no pet.).

Here, George threatened Stephanie with the high chair leg by stating he would "bash her face in." The threat caused Stephanie to reasonably feel that George would hit her. A fact-finder could decide Stephanie was afraid that serious bodily injury or death could occur because she testified feeling that her life was at stake. George also threatened to hit Jonathan with the chair leg and said he would kill him if he called the police. In addition to stating he was "very scared" and was afraid he "was going to be gone too," the following exchange occurred during Jonathan's cross-examination:

5

Q.	. . . did there come a point where you didn't really feel like your life was in jeopardy?

A.	I was - - I was kind of still afraid, because I - - he - - he doesn't - - I don't think he really would lie about something like that. But then at points where he could just cool down, it wouldn't happen. That's what I would think.

In both instances, injury was imminent because George threatened present harm and had the present ability to carry out his threats. *See Tidwell v. State*, 187 S.W.3d 771, 774–75 (Tex. App.—Texarkana 2006, pet. struck). We give full play to the trial court's responsibility to weigh this testimony and draw the reasonable inference that George intentionally or knowingly threatened Stephanie and Jonathan with imminent bodily injury. The evidence is legally sufficient on this point.

Next, under the Texas Penal Code, a deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (Vernon Supp. 2008); *Charleston v. State*, 33 S.W.3d 96, 100 (Tex. App.—Texarkana 2000, pet. ref'd). Because a high-chair leg is not designed, made, or adapted for the purpose of inflicting bodily injury, it is not a deadly weapon per se. *McCain v. State*, 22 S.W.3d 497, 502 (Tex. Crim. App. 2000); *In re S.B.*, 117 S.W.3d 443, 446 (Tex. App.—Fort Worth 2003, no pet.); *Charleston,* 33 S.W.3d at 99. The following five-factor test can be used in determining whether the chair leg is a deadly weapon: (1) physical proximity between the victim and the object; (2) the threats or words used by the assailant; (3) the size and shape of the weapon; (4) the weapon's ability to inflict death or serious injury; and (5) the manner in which the defendant used the weapon. *Brown v. State*, 716 S.W.2d 939, 946–47 (Tex. Crim. App. 1986); *Tisdale v. State*, 686 S.W.2d 110,

6

115 (Tex. Crim. App. 1984); *English v. State*, 647 S.W.2d 667, 669 (Tex. Crim. App. 1983); *Blain v. State*, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983); *Williams v. State*, 575 S.W.2d 30 (Tex. Crim. App. 1979). No one factor is determinative, and each case must be examined on its own facts. Either expert testimony or lay testimony may be sufficient to support a finding. *English*, 647 S.W.2d at 668–69.

The evidence established that George was within three to four yards of Stephanie when he threatened her. The distance between George and Jonathan during the various threats is not established in the record. The threats spewed from George demonstrate the capability of the chair leg to be used as a deadly weapon. George raised and waved the chair leg in a manner that could be used to cause serious injury or death. Turner testified that the three-and-a-half to four-foot metal pole brandished by George was capable of causing serious injury or death. In sum, all factors save proximity tend to support the finding that the chair leg was a deadly weapon. Yet, since George's ability to actually hit Stephanie or her son need not be proved, and because Turner's testimony alone could be sufficient to support the deadly weapon finding, we find when the evidence is viewed in the light most favorable to the verdict, it is legally sufficient to establish that the chair leg was a deadly weapon. *Miller*, 741 S.W.2d at 503; *English*, 647 S.W.2d at 668–69.

## III. The Evidence Is Factually Sufficient to Support George's Conviction

Because factual sufficiency is an issue of fact, we are not free to reweigh the evidence and set aside a judgment merely because we feel a different result is more reasonable. *Clewis*, 922

S.W.2d at 135. Instead, we give due deference to the fact-finder's determinations and will find the evidence factually insufficient only when necessary to prevent manifest injustice. *Johnson*, 23 S.W.3d at 8–9, 12; *Clewis*, 922 S.W.2d at 133, 135. Thus, we view the evidence in a neutral light when assessing factual sufficiency and determine whether the proof of guilt is so obviously weak as to undermine confidence in the verdict, or, if taken alone, is greatly outweighed by contrary proof so as to be clearly wrong and unjust. *Johnson*, 23 S.W.3d at 11; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); *Harris v. State*, 133 S.W.3d 760, 764 (Tex. App.—Texarkana 2004, pet. ref'd). If we find the evidence factually insufficient, we must vacate the conviction and remand the cause for a new trial in order to avoid substituting our own judgment for that of the fact-finder. *Clewis*, 922 S.W.2d at 133–35.

The evidence recounted above supports the finding that George intentionally or knowingly threatened Stephanie and Jonathan with imminent bodily injury while exhibiting a deadly weapon. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2). We cannot say that the trial court's finding was clearly wrong or was against the great weight and preponderance of this evidence, which is factually sufficient to support the conviction.

## IV. Written Judgment Must Be Reformed

Where there is a variation between the oral pronouncement of sentence and the written memorialization of the sentence, the oral pronouncement controls. *Thompson v. State*, 108 S.W.3d 287, 290 (Tex. Crim. App. 2003); *Coffey v. State*, 979 S.W.2d 326, 328 (Tex. Crim. App. 1998).

8

While George was orally sentenced to two thirty-five-year concurrent sentences for aggravated assault of Stephanie and her son, the written judgment reflects George is to serve two life sentences for the same crimes. This Court has the authority to reform the judgment sua sponte in order to "make the record speak the truth." TEX. R. APP. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *Asberry v. State*, 813 S.W.2d 526 (Tex. App.—Dallas 1991, pet. ref'd). We therefore modify the judgment to reflect the oral pronouncement at trial.

## V.    Conclusion

Based on a finding that the evidence is legally and factually sufficient, we affirm George's conviction of aggravated assault committed against Jonathan. Also, we modify the judgment to conform with the oral pronouncement at trial and reform George's judgment and sentence to confinement for thirty-five years, to run concurrently with the sentence in cause number 06-08-00056-CR.

Jack Carter<br>
Justice

Date Submitted:     September 29, 2008
Date Decided:     October 22, 2008

Do Not Publish

9