**Jesus Daniel ALVARADO, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 09–09–00436–CR.**

Court of Appeals of Texas,
Beaumont.

Submitted April 22, 2010.

Decided May 19, 2010.

Discretionary Review Dismissed
Sept. 15, 2010.

Clinard J. Hanby, The Woodlands, for appellant.

Brett W. Ligon, Dist. Atty., William J. Delmore III, Asst. Dist. Atty., Conroe, for state.

Before McKEITHEN, C.J., KREGER and HORTON, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

A jury found Jesus Daniel Alvarado guilty of aggravated assault with a deadly weapon. In punishment, the trial court found Alvarado to be an habitual offender and imposed a life sentence. *See* TEX. PEN.CODE ANN. § 22.02(a)(2) (Vernon Supp. 2009). The sole issue raised on appeal contends an erroneous jury instruction on the use or exhibition of a knife as a deadly weapon caused egregious harm. Because the error did not cause egregious harm, we affirm the judgment.

The trial court submitted a jury instruction under Section 1.07(a)(17)(A). *See* TEX. PEN.CODE ANN. § 1.07(a)(17)(A) (Vernon Supp. 2009) ("Deadly weapon" means "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury[.]"). The knife admitted into evidence in this case is a large kitchen knife with a blade between five and six inches in length. Kitchen knives are designed for purposes other than inflicting death or serious bodily injury; thus, a kitchen knife will not qualify as a deadly weapon unless it is actually used or intended to be used in a manner capable of causing death or serious bodily injury. *Thomas v. State*, 821 S.W.2d 616, 620 (Tex.Crim.App.1991); *see also* TEX. PEN.CODE ANN. § 1.07(a)(17)(B)

(Vernon Supp. 2009) (Deadly weapon means "(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."). Because Alvarado did not object to the instruction that a knife is a deadly weapon, the charge error is reversible error only if that error resulted in egregious harm. See *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (op. on reh'g).

■■■■ "Errors that result in egregious harm are those that affect 'the very basis of the case,' 'deprive the defendant of a valuable right,' or 'vitally affect a defensive theory.'" *Ngo v. State,* 175 S.W.3d 738, 750 (Tex.Crim.App.2005) (quoting *Hutch v. State,* 922 S.W.2d 166, 171 (Tex.Crim.App. 1996)); *see also Almanza,* 686 S.W.2d at 172. "[T]he actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza,* 686 S.W.2d at 171.

The trial testimony showed that the police responded to a call of "disturbance with weapons[.]" The police detained Alvarado nearby and eventually recovered a kitchen knife outside. The officer who recovered the knife testified that in his opinion the knife was a deadly weapon that is capable of causing death. An officer who examined the scene testified that a door had been kicked completely off of its hinges and someone had kicked in a hole by the door handle. The complainant had a red mark on her cheek. The complainant signed an affirmation of prosecution on the night of the offense but later signed an affidavit of non-prosecution.

At trial, the complainant testified that she still loved Alvarado and that she was testifying involuntarily under subpoena. According to the complainant, Alvarado kicked in the locked door, entered the complainant's room, "[a]nd he come in with a knife, and he come at my head and I ducked and he left my room." She testified that if she had not ducked, the knife "would have probably went in my head." When asked about a prior statement she had made, the complainant recalled that she had stated that Alvarado came into her room with the knife toward her head. She agreed that "he's the one that came at me with the knife." The complainant insisted, however, that Alvarado did not threaten to kill her.

On cross-examination, the complainant stated that she did not believe that Alvarado tried to pick the lock with the knife, but she was not certain. According to the complainant, Alvarado "was trying to get everybody scared and for everybody to go[,]" and Alvarado acted the way he did that day because the complainant had been smoking crack cocaine with two of her friends. When asked if there was anything to stop Alvarado from stabbing her, the complainant replied, "I guess he caught his snap."

The complainant's female acquaintance testified that after Alvarado broke down the door he shoved the complainant onto the bed and held the knife up to the complainant's head, between her eye and ear. This witness testified that Alvarado threatened to kill the complainant, that he left when he realized someone had called for the police, and as he left he told the witness that "next time it will be me that he kills." At the close of the State's case-in-chief, defense counsel moved for a directed verdict on grounds that the State "failed to prove that [the defendant] exhibited or used a deadly weapon in the course of committing an assault."

During jury argument, the prosecutor referred the jury to the definition of

"deadly weapon" and stated, "Deadly weapon is defined. It says you are instructed that a knife is a deadly weapon. Here it is." Counsel argued the evidence established that Alvarado intentionally or knowingly threatened bodily injury to the complainant if the jury believed either the eyewitness's testimony that Alvarado put a knife to the complainant's head and threatened to kill her, or the complainant's testimony that Alvarado came at her with a knife and she had to duck to avoid being struck by the knife. The prosecutor added, "We've already talked about there's no question he exhibited a deadly weapon."

Defense counsel argued, "The State seems to be indicating to you that somehow the mere existence of this knife— we've got a knife; it's aggravated assault. That's not the way it works, folks. The knife has to be used to be exhibited." Defense counsel argued that the evidence supported a scenario that Alvarado had no intention to assault anyone, but he used the knife to try to open the door, and he then became frustrated and kicked the door in because he was trying to stop his girlfriend from using drugs. In closing, the prosecutor argued that there was no evidence that Alvarado used the knife to try to manipulate the lock on the door.

The abstract paragraph instructed the jury that "[a] person commits an offense if the person intentionally or knowingly threatens to cause imminent bodily injury to another, and the actor uses or exhibits a deadly weapon during the commission of the assault." The application paragraph read, as follows:

Now, bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that on or about March 16, 2009, in Montgomery County, Texas, the defendant, Jesus Daniel Alvarado, AKA: Jesse Alvarado, did then and there intentionally or knowingly threaten imminent bodily injury to [the complainant], and during the commission of the assault, the defendant used or exhibited a deadly weapon, to-wit: a knife, you will find the defendant guilty of Aggravated Assault With A Deadly Weapon as charged in the indictment.

The charge included instructions on the lesser-included misdemeanor offenses of Class A Assault and Class C Assault.

When the trial court polled the jury, one of the jurors stated that she was "not happy about it" but would say yes. Under further questioning, the juror stated, "there was a knife, I agree with that. I just—what was the intent? Everybody was under the influence of drug and alcohol." The trial court ordered the jury to deliberate further, and the jury returned with a unanimous verdict.

On appeal, Alvarado argues that by defining "deadly weapon" as "anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury" and by instructing the jury that a knife is a deadly weapon, the trial court both failed to inform the jury that it must find that the knife "in the manner of its use or intended use, is capable of causing death or serious bodily injury" and instructed a verdict on an element of the offense that had been contested at trial. *Compare* Tex. Pen.Code Ann. § 1.07(a)(17)(A), *with* Tex. Pen.Code Ann. § 1.07(a)(17)(B). The State argues that it was so obvious that the knife brandished by Alvarado would qualify as a deadly weapon that all of the parties assumed it was a deadly weapon. According to the State, the deadly weapon issue was unrelated to any contested issue or defensive theory and reasonably conceded by the defense.

This case bears some similarity to *Blanson v. State*, an aggravated robbery prose-

cution in which the appellate court held that egregious harm resulted from the erroneous instruction that a pocketknife is a deadly weapon *per se*. *Blanson v. State*, 107 S.W.3d 103, 105 (Tex.App.-Texarkana 2003, no pet.). In *Blanson*, the defendant held a closed pocketknife and the parties disputed that it constituted a deadly weapon because of the manner or intended manner of its use. *Id.* at 105–06. The jury charge resulted in egregious harm because the jury was authorized to convict if it found that the accused possessed a knife without requiring proof of the knife's capability to cause imminent bodily injury or death in the way it was used. *Id.* at 106. Here, Alvarado moved for a directed verdict based upon the State's failure to prove that Alvarado used or exhibited a deadly weapon in the course of committing an assault, but the defense never suggested that this particular knife would not be deadly if wielded against a person.

 In determining whether the erroneous instruction caused egregious harm to the appellant, the actual degree of harm must be assessed in light of the state of the evidence. *Almanza*, 686 S.W.2d at 171. Although Alvarado did not concede that he held the knife to the complainant's head, he stipulated that he possessed the knife that was admitted into evidence. Because the knife was admitted into evidence, the jury could determine whether the knife was capable of inflicting serious bodily injury by examining the object. *See Robertson v. State*, 163 S.W.3d 730, 734 (Tex.Crim.App.2005). Unlike the closed pocketknife in *Blanson*, even casual observation of the five-to-six-inch blade on Alvarado's knife reveals that if wielded during an assault, the knife is capable of causing serious bodily injury or death. *See Blanson*, 107 S.W.3d at 106. Because "objects used to threaten deadly force are in fact deadly weapons[,]" a knife is a deadly

weapon if its possession facilitates the commission of the underlying assaultive offense. *McCain v. State*, 22 S.W.3d 497, 503 (Tex.Crim.App.2000). "[A]n object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury." *Id.* at 503.

Although Alvarado argued to the jury that his purpose in wielding the knife may have been to get the door open, there is no evidence that he discarded the knife at the door. The State proffered eyewitness testimony that Alvarado held the knife to the complainant's head and threatened to kill her. Although the complainant disputed the eyewitness's account of the incident and testified that Alvarado did not hold the knife to her head, the complainant also testified that Alvarado came at her with the knife. Together with the police officer's testimony that the knife was capable of causing death, the evidence supports a finding that Alvarado used the knife in a manner that made the knife capable of causing death or serious bodily injury. *See* Tex. Pen.Code Ann. § 1.07(a)(17)(B).

Alvarado argues that egregious harm resulted from the erroneous charge because the jury did not decide whether this particular knife was used as a deadly weapon under the circumstances of this particular case. The case relied upon by the appellant, *Sanchez v. State*, is distinguishable. *See Sanchez v. State*, 209 S.W.3d 117 (Tex.Crim.App.2006). In *Sanchez*, an official oppression prosecution based upon sexual harassment, the jury charge abstractly defined "sexual harassment" but "did not clearly inform the jury that it must find that, not only the appellant's 'sexual advances,' but also his 'requests for sexual favors, or other verbal or physical conduct of a sexual nature,' must be 'unwelcome' in order to support a guilty verdict." *Id.* at 122. In addition, the

charge failed to "inform the jury that it must find that the appellant was *aware* that *any* of his sexual conduct was unwelcome" before finding the defendant guilty. *Id.* The Court of Criminal Appeals held that the jury charge failed to require the jury to find that the accused committed each and every element of sexual harassment before it could convict the accused of official oppression. *Id.* at 120. The error resulted in egregious harm because the jury was instructed in such a way that it was not required to find every element of the offense to have been proven beyond a reasonable doubt. *Id.* at 125.

 In Alvarado's case, the application paragraph required the jury to find that Alvarado "used or exhibited a deadly weapon, to-wit: a knife" during the commission of the assault, but the abstract definition included in the charge defined the wrong type of deadly weapon. The jury found Alvarado used or exhibited the knife during the course of intentionally or knowingly threatening imminent bodily injury to the complainant. To be considered a deadly weapon, a knife need not be actually used to inflict an injury if its possession facilitates the assault. *See McCain,* 22 S.W.3d at 503. Given the physical properties of the knife at issue in this case, the knife clearly would be capable of causing serious bodily injury if it were used as an instrument of force against another person. The jury did find that Alvarado committed an assault with the knife. By virtue of the assaultive manner of the use of the weapon, that finding necessarily included a finding that the knife was capable of causing death or serious bodily injury. Therefore, the erroneous jury charge did not deprive Alvarado of the valuable right to have a jury finding on each element of the offense. *See Almanza,* 686 S.W.2d at 172.

Alvarado contends that the erroneous definition of deadly weapon permeated the entire trial. At trial, Alvarado presented a defensive theory that he did not threaten the complainant with imminent bodily injury; however, he did not suggest that the knife would not have been capable of inflicting serious bodily injury on the complainant if it had been used forcefully against her. The erroneous definition did not vitally affect his defensive theory. *See id.*

We hold the erroneous jury charge did not result in egregious harm. Accordingly, we overrule the sole issue raised on appeal and affirm the judgment.

AFFIRMED.