NUMBER 13-10-00214-CR

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI – EDINBURG

                                                                                                                             

 

LUCIANO BALADEZ,                                                                              Appellant,

                                                                             

 

v.

 

THE STATE OF TEXAS,                                                                 Appellee.

                                                                                                                             

 

On appeal from the 24th District Court

of Victoria County, Texas.

                                                                                                                             

 

MEMORANDUM OPINION

 

Before Chief Justice
Valdez and Justices Rodriguez and Garza 

Memorandum Opinion by
Justice Garza 

 

            A jury convicted
appellant, Luciano Baladez, in Count One of retaliation, enhanced to a
second-degree felony, see Tex.
Penal Code Ann. §§ 36.06, 12.42(a)(3)
(West Supp. 2010), and in Count Two, of aggravated assault, enhanced to
a first-degree felony.  See id. §§ 22.02(a)(2), 12.42(b).  The jury assessed
punishment at ten years’ imprisonment plus a $1000 fine and court costs for
Count One, and thirty-three years’ imprisonment and a $3,000 fine for Count
Two, with the sentences ordered to run concurrently.  By a single issue,
appellant contends the evidence is legally insufficient to support his
conviction for aggravated assault.  Specifically, appellant contends the
evidence is insufficient to establish that he threatened the victim with
imminent bodily injury or that he used or exhibited a deadly weapon during an
assault of the victim.  We affirm.

I. 
Background

A.  State’s Evidence

            Around midnight on September 6, 2009,
Andrew Rojas Sr. (“Rojas”) and his son, Andrew Rojas Jr. (“Andrew”), were
barbequing outside their home in Bloomington, Texas.  Rojas noticed someone,
later identified as appellant, near a storage shed on his elderly neighbors’
property.  Rojas went to investigate.  The events that followed were disputed
at trial.  We detail below relevant testimony presented by some of the
witnesses.  

1.  Rojas 

            Rojas testified that while
outside barbequing, he saw appellant looking through the windows of a storage
shed on property belonging to Rojas’s neighbors, the Kings.  Rojas observed
appellant set down a beverage he was carrying and urinate near the storage
shed.  Suspecting that appellant did not “belong there,” Rojas went to investigate. 
Andrew, who was in the restroom, did not go with him.  As Rojas approached, he
saw appellant attempting to open the lock on the Kings’ storage shed with a
knife “about 12 inches long.”  Rojas asked appellant what he was doing;
appellant said, “nothing.”  When Rojas accused appellant of trying to open the
door, appellant’s tone of voice “changed”; he turned toward Rojas, saying, “I
told you I didn’t do a fucking thing.”  When appellant turned, Rojas testified
he was in “imminent fear” that appellant would harm him.  Rojas grabbed
appellant’s hand and wrestled him to the ground.  When appellant hit the
ground, he released the knife.  Rojas saw Andrew running toward them with a
cell phone.  As Rojas and appellant continued to wrestle, appellant kept trying
to reach for the knife.  Appellant told Rojas that if he called the police,
appellant would come back and kill him and his family.  Rojas directed Andrew
to move the knife out of appellant’s reach and call the police.  

            On cross-examination, defense
counsel asked Rojas if he had been drinking.  He said he had consumed two beers
at the most.  

2.  Andrew 

            Andrew testified that he and Rojas
noticed appellant on the Kings’ property.  After Andrew came out of the
restroom, he followed Rojas to the neighbors’ property.  Rojas already had
appellant on the ground and told Andrew to call the police.  Andrew did not
have his cell phone with him; he returned to the house and woke his wife, who
called the police.  While waiting for the police to arrive, Andrew knocked on
the neighbors’ door, but they were not home.  Andrew then woke another
neighbor, Myron Charleston.  While waiting for the police to arrive, Andrew
heard appellant threaten to kill Rojas for not letting him go.  Andrew
identified the knife that was involved in the incident.  

            On cross-examination,
Andrew said that on the night of the incident, he had consumed one beer.  By
the time he arrived at the Kings’ property, Rojas had appellant pinned down. 
Andrew did not see appellant attempting to pry the door open and did not see
appellant holding the knife.  

3.  Maria Rojas 

            Maria testified that on the night of
the incident, Andrew awoke her and told her to call 911.  She did so; at some point,
she handed the phone to Andrew to report the incident.

4.  Myron Charleston 

            Charleston testified that he lived
near his cousins, the Kings, and Rojas.  Around midnight on the night of the
incident, Andrew awoke Charleston by banging on his door.  Charleston went with
Andrew to the Kings’ property, where Rojas had appellant pinned down. 
Charleston heard appellant threaten Rojas that he would come back and kill
him.  Charleston also saw the knife that had been kicked aside in the scuffle
and identified it at trial. 

5.  Officer Robert Ontiveros Jr. 

            Robert Ontiveros, a patrol sergeant
with the Victoria County Sheriff’s Office, testified that he and Deputy Leticia
Guajardo responded to the 911 call.  He interviewed Rojas, Andrew, and
Charleston at the scene.  Officer Ontiveros identified the knife, which was
recovered on the ground near the storage shed; no firearms or other weapons
were present.  Officer Ontiveros identified appellant as the person apprehended
at the scene and testified that appellant did not have a reputation for being
law-abiding and honest. 

            On cross-examination,
Officer Ontiveros testified that when appellant was arrested, he did not appear
to be injured but did appear to be highly intoxicated.  

6.  Officer Leticia Guajardo

            Officer Guajardo testified that she
was dispatched to the Kings’ property the night of the incident and interviewed
Rojas, who described what had transpired.  Officer Guajardo stated that the
level of force that Rojas used in restraining appellant appeared to be
reasonable and that she did not observe any injuries to appellant.  She
confirmed that appellant has a reputation for not being law-abiding and
truthful. 

B.  Defense Evidence

1.  Angela Martinez

            The defense called Angela
Martinez, the Victoria County Sheriff’s Office investigator assigned to
appellant’s case.  Defense counsel asked Martinez whether she investigated to
determine whether the knife used in the incident could have been belonged to
the Rojas family.  Martinez responded that she had not because she accepted
Rojas’s account of the incident.  

            On cross-examination, the
prosecutor asked Martinez whether she would be in “immediate fear of bodily
injury” if he held the knife up and “looked like [he] was going to use it on
you”; Martinez responded that she would be.  She also stated the knife could
cause serious bodily injury and that it was an effective knife for cutting or
stabbing.  Martinez also confirmed that appellant’s booking photograph does not
show any evidence of injuries. 

2.  Jason Rivera 

            Rivera, who lives near the King
property, testified that on the night of the incident, appellant was visiting
with him outside until around midnight.  Rivera did not see that appellant was
carrying a knife like the one admitted in evidence.  Rivera said he sat outside
for awhile after appellant left, but did not hear or see the police arrive at
the King property. 

            On cross-examination,
Rivera admitted he was currently incarcerated on a charge of possession of
certain chemicals with intent to manufacture methamphetamine.  He also admitted
to a conviction for felony possession of marijuana and convictions for theft
and evading arrest.  

3.  Appellant

            Appellant testified that when he left
Rivera’s house, he was walking home, which was about seven blocks away.  He
said that he was on the King property, but stopped to “take a leak.”  He
testified that he had a pocketknife in his pocket, but denied that the knife
recovered in the incident was his.  Appellant said that Rojas and Andrew
approached him and accused him of attempting to break in.  He said both Rojas
and Andrew were drunk and that Rojas told Andrew to go get a shotgun. 
According to appellant, Rojas hit him and jumped on top of him.  While Rojas
was hitting him and hurting his back, Andrew returned with a shotgun and
threatened to shoot him.  Appellant admitted that he had been in prison on a
charge of retaliation on a police officer.  Appellant said that he was “jumped”
by Rojas and Andrew, and that he suffered bruises as a result. 

            On cross-examination,
appellant said he did not have an opportunity to tell the police that he was
assaulted because they did not want to hear his side of the story.  Appellant
admitted that he had an extensive criminal history, including numerous
convictions for evading arrest, theft, and burglary.  State Exhibits 18 through
26 were admitted, which consisted of appellant’s misdemeanor convictions.  The
State also admitted evidence of the third-degree felony retaliation offense. 
With respect to the retaliation offense, appellant denied that he threatened to
kill a police officer.  

            As a rebuttal witness, the
State called Thurman Marshall, the officer that appellant was convicted of
threatening.  Officer Marshall testified that in 1993, appellant threatened to
kill him and his family; appellant was convicted of retaliation for the
offense. 

II. 
Standard of Review and Applicable Law

            The court
of criminal appeals has recently held that there is “no meaningful distinction
between the Jackson v. Virginia legal sufficiency standard and the Clewis
factual-sufficiency standard” and that the Jackson standard “is the
only standard that a reviewing court should apply in determining whether the
evidence is sufficient to support each element of a criminal offense that the
State is required to prove beyond a reasonable doubt.”  Brooks v. State,
323 S.W.3d 893, 902–03, 912 (Tex. 2010) (plurality op.) (citing Jackson v.
Virginia, 443 U.S. 307, 319 (1979)).  Accordingly, we review claims of
evidentiary sufficiency under “a rigorous and proper application of the Jackson
standard of review.”  Id. at 906–07, 912.  

            Under the
Jackson standard, “the relevant question is whether, after viewing the
evidence in the light most favorable to the prosecution, any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt.”  Jackson, 443 U.S. at 319; see Brooks, 323 S.W.3d at
898–99 (characterizing the Jackson standard as:  “Considering all of the
evidence in the light most favorable to the verdict, was a jury rationally
justified in finding guilt beyond a reasonable doubt”).

            We
measure the legal sufficiency of the evidence by the elements of the offense as
defined by a hypothetically correct jury charge.  Coleman v. State, 131
S.W.3d 303, 314 (Tex. App.—Corpus Christi 2004, pet. ref’d) (citing Malik v.
State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).  “Such a charge [is]
one that accurately sets out the law, is authorized by the indictment, does not
unnecessarily increase the State’s burden of proof or unnecessarily restrict
the State's theories of liability, and adequately describes the particular
offense for which the defendant was tried.”  Villarreal v. State, 286
S.W.3d 321, 327 (Tex. Crim. App. 2009) (quoting Malik, 953 S.W.2d at
240).  

            A person
commits an assault-by-threat if the person “intentionally or knowingly
threatens another with imminent bodily injury[.]”  Tex. Penal Code Ann. § 22.01(a)(2); Olivas v. State,
203 S.W.3d 341, 345 (Tex. Crim. App. 2006); see Dolkart v. State,
197 S.W.3d 887, 893–94 (Tex. App.—Dallas 2006, pet. ref’d).  A person commits
aggravated assault if he commits assault and, during the commission of the
assault, he “uses or exhibits a deadly weapon.”  Tex. Penal Code Ann. §§ 22.01(a)(2), 22.02(a)(2); Dolkart,
197 S.W.3d at 892.  Assault by threat is a “nature of conduct” offense that
requires us to review the actor’s conduct to determine whether he intended to
cause in the victim a reasonable apprehension of imminent bodily injury.  Tidwell
v. State, 187 S.W.3d 771, 774 (Tex. App.—Texarkana 2006, pet. dism’d); see
Dolkart, 197 S.W.3d at 893; see also Coleman v. State, No.
07-04-0248-CR, 2005 Tex. App. LEXIS 221, at *11 (Tex. App.—Amarillo Jan. 13,
2005, no pet.) (mem. op., not designated for publication).  Assault by threat
requires only fear of imminent bodily injury and does not require a finding of
actual bodily injury.  Dolkart, 197 S.W.3d at 893.  It is well
established that a threat need not be voiced and may be communicated by action
or conduct.  Donoho v. State, 39 S.W.3d 324, 329 (Tex. App.—Fort Worth
2001, pet. ref’d) (op. on reh’g).

            A deadly
weapon is defined as anything that in the manner of its use or intended use is
capable of causing death or serious bodily injury.  See Tex. Penal Code Ann. § 1.07(a)(17)(B) (West
Supp. 2010); Tucker v. State, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008). 
“‘Serious bodily injury’ is defined as ‘bodily injury that creates a
substantial risk of death or that causes death, serious permanent
disfigurement, or protracted loss or impairment of the function of any bodily
member or organ.’”  Tucker, 274 S.W.3d at 691 (quoting Tex. Penal Code Ann. § 1.07(a)(46)).  “The
State is not required to show that the ‘use or intended use causes death or
serious bodily injury’ but that the ‘use or intended use is capable of
causing death or serious bodily injury.’”  Id. (quoting McCain v.
State, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000)).  It is the use or
exhibition of a deadly weapon, not the identification or the name of a
particular type of knife, that is an element of aggravated assault.  Tex. Penal Code Ann. § 22.02(a)(2).  

            It is
settled that while not every type of knife is per se a deadly weapon, any knife
can—by virtue of its use—become a deadly weapon.  See, e.g., McCain, 22
S.W.3d at 502–03.  Factors to consider in determining whether a knife is intended
to be used as a deadly weapon include:  (1) the distance between the accused
and the victim; (2) threats or words used by the defendant; (3) the size and
shape of the weapon; (4) the weapon’s ability to inflict death or serious
injury; and (5) the manner in which the defendant used the weapon.  See Bailey
v. State, 46 S.W.3d 487, 491–92 (Tex. App.—Corpus Christi 2001, pet.
ref’d); see also Khan v. State, No. 13-09-348-CR, 2010 Tex. App. LEXIS
10070, at *8 (Tex. App.—Corpus Christi Dec. 21, 2010, no pet.) (mem. op., not
designated for publication).  The actual knife used in the commission of
an offense need not be introduced into evidence if a witness is able to testify
about the knife and the manner in which it was used.  Billey v. State,
895 S.W.2d 417, 420 (Tex. App.—Amarillo 1995, pet. ref’d).  Either expert
testimony or lay testimony may be sufficient to support a deadly weapon
finding.  Bailey,  46 S.W.3d at 492.   

III.  Discussion


            Appellant challenges the sufficiency of
the evidence that he:  (1) threatened Rojas with imminent bodily injury, and
(2) used or exhibited a deadly weapon (the knife).  Specifically, appellant
contends there is no evidence that he “made any gesture with the knife, came at
Rojas, Sr., or did anything to imply or expressly threaten Rojas, Sr., with
imminent bodily injury.”  He further contends there is no evidence that he
“pointed the blade of a knife in Rojas’s direction.”[1] 
According to appellant, “[h]olding a knife is not, in and of itself, sufficient
to support the aggravated assault conviction in this case.”  

            The State responds, in
part, that:  (1) appellant cites no authority for his assertion that merely
holding a knife is insufficient to constitute a threat of imminent bodily
injury; (2) there are many ways of holding a knife, and in certain
circumstances, even revealing a knife can communicate a threat of imminent
bodily injury; and (3) to prove the deadly weapon element, the State was only
required to prove that the knife was used or exhibited during the assault and
that its use or intended use was capable of causing serious bodily injury.  The
State further argues that the record shows “that a visual demonstration was
made to the jury of how [appellant] threatened Mr. Rojas with the knife.” 
Alternatively, the State argues that it met its burden under a hypothetically
correct jury charge because the manner and means alleged was not essential to
the offense.

A.  Deadly Weapon

            Rojas
testified that the knife appellant was using in attempting to pry open the lock
on the storage shed was “about 12 inches long.”  When appellant turned toward
Rojas—still holding the knife—his voice “changed” and he denied that he was
“do[ing] a fucking thing.”  An intent to inflict serious bodily injury or death
may be shown by evidence of assertive conduct by an attacker.  Ortiz v.
State, 993 S.W.2d 892, 894 (Tex. App.—Fort Worth 1999, no pet.).  Rojas
testified that the knife placed him in fear of imminent bodily injury. 
Appellant did not release the knife until Rojas wrestled him to the ground and
then continued to try to reach for the knife while wrestling with Rojas.  The
knife was introduced in evidence and the jury had an opportunity to examine
it.  See Alvarado v. State, 317 S.W.3d 749, 753 (Tex. App.—Beaumont
2010, pet. ref’d) (“Because the knife was admitted into evidence, the jury
could determine whether the knife was capable of inflicting serious bodily
injury by examining the object.”).  The knife, which we have also examined, is
thirteen inches long with an eight-inch blade and a five-inch hard plastic
handle.  The blade is slightly curved with a sharp point and a serrated edge.  See
id. (noting that “even casual observation of the five-to-six-inch blade on
Alvarado’s knife reveals that if wielded during an assault, the knife is
capable of causing serious bodily injury or death”).  Officer Martinez
testified that the knife was capable of causing serious bodily injury and was
an effective knife for cutting and stabbing.  We therefore conclude that a
rational trier of fact could have found that appellant used or exhibited a
deadly weapon based upon the evidence presented to the jury at trial.  See
Jackson, 443 U.S. at 319.  

B.  Threat      

            Appellant
also contends that the evidence is legally insufficient to support the finding
that he threatened Rojas with imminent bodily injury.  We disagree.

At trial, Rojas
re-enacted how appellant reacted when Rojas approached him:

Q [Prosecutor]:          Okay.  And if
you would, please, show me—if you can move over here to the wall—exactly what
he was doing with the knife using State’s Exhibit 13 [the knife].

 

A [Rojas]:                   Well he
got the knife in between the door and try [sic] to—I don’t know he had it
either this way or this way.  I’m pretty sure it was this way trying to open it
up.

 

Q:                                Okay.

A:                                And
when I showed up—

Q: 
                              Did you show up over here?

 

A: 
                              Right.

 

Q: 
                              And what did he do with the knife then?

 

A: 
                              He stopped right there.

 

Q: 
                              Okay.  And what did you say to him?

 

A: 
                              I said “What are you doing?”

 

Q: 
                              Okay.  And what did he say back?

 

A: 
                              He said I don’t do nothing [sic].

 

Q: 
                              Okay.

 

A:                                And
I said what do you mean you don’t do nothing?  You try to open the door. 
That’s what you trying to do.

 

Q: 
                              And what he did say or do to that?

 

A: 
                              And then he changed—he changed the voice.

 

Q: 
                              He changed his voice?

 

A:                                He
said[, “] I told you I didn’t do a fucking thing[,”] and he turned around like
that.

 

Q:                                Okay. 
Now at that time[,] are you standing about as far from him as I am—

 

A: 
                              Yes. 

 

Q: 
                              —from you?

 

A: 
                              Right.

 

Q:                                Okay. 
When he did that like that to you, were you in imminent fear that he might
cause you harm?

 

A: 
                              Yes.

 

Q:                                Okay. 
And when I mean “harm,” some kind of pain, bodily injury?

 

A: 
                              Uh-huh.

 

Q:                                So
what action did you take?  Let’s change positions, okay?

 

A: 
                              Okay.  I just grabbed his hand like that.

 

Q: 
                              Okay.  And then what did you do?

 

A: 
                              I try—we were wrestling.

 

            In
conducting a sufficiency review, we presume that undescribed courtroom demonstrations
supported the jury's verdict.  See Rogers v. State, 756 S.W.2d 332, 336
(Tex. App.—Houston [14th Dist.] 1988, pet. ref'd) (noting that undescribed
testimonial gestures undoubtedly had a significant impact on the jury’s
assessment of exactly how appellant held his hand during the robbery); see
also Morales v. State, 293 S.W.3d 901, 909 (Tex. App.—Texarkana 2009, pet.
ref'd) (holding that, as appellate court, it was “constrained to defer to the
jury's findings, based on its observation of the gestures and demonstrations at
trial” which were “not transcribed and which we cannot see”); Cornett v.
State, No. 13-03-036-CR, 2004 Tex. App. LEXIS 3385, at *17 (Tex. App.—Corpus
Christi April 15, 2004, no pet.) (mem. op., not designated for publication)
(noting that jury could have concluded that defendant acted threateningly where
jury saw demonstration of how defendant held a knife); Johnson v. State,
No. 14-99-00968-CR, 2001 Tex. App. LEXIS 4963, at *13 (Tex. App.—Houston [14th
Dist.] July 26, 2001, no pet.) (mem. op., not designated for publication)
(noting that testimony that knife was “about this long (indicating)” and “about
this big, wide (indicating)” undoubtedly had significant impact on jury’s
assessment of the size of the knife and whether State proved the knife was a
deadly weapon).  A threat may be communicated by action or conduct.  See Donoho,
39 S.W.3d at 329.  “The mere presence of a deadly weapon, under proper
circumstances, can be enough to instill fear and threaten a person with bodily
injury.”  Tidwell, 187 S.W.3d at 775.  Here, Rojas demonstrated for the
jury that appellant “turned around like that” and also demonstrated the
physical distance between himself and appellant.  Rojas testified that when
appellant “did like that to [him],” he was placed in imminent fear of bodily
injury.  We are “constrained to defer to the jury's findings, based on its
observation of the gestures and demonstrations at trial”, which were “not
transcribed and which we cannot see.”  See Morales, 293 S.W.3d at 909.  Thus,
even if the State was
required to prove that appellant threatened Rojas by “holding or pointing the
blade of a knife in [Rojas’s] direction,” we would assume that Rojas
demonstrated to the jurors that appellant pointed the knife in his direction.  See id.; Rogers v.
State,
756 S.W.2d 332, 336 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd).  We find
the evidence to be legally sufficient to allow a rational trier of fact to find
that appellant used a knife to intentionally or knowingly threaten Rojas with
death or serious bodily injury.  See Tex.
Penal Code Ann. § 22.01 (a)(2); Olivas, 203 S.W.3d at 345.  

IV. 
Conclusion

            We overrule appellant’s
sole issue and affirm the trial court’s judgment. 

            

                                                                                    

 

                                                                                                ________________________

DORI
CONTRERAS GARZA

                                                                                                Justice

Do
not publish.

Tex. R. App. P.
47.2(b)

Delivered and
filed the 

14th day of July,
2011.









[1]
Count Two of the indictment alleged that Baladez “intentionally or knowingly
threaten[ed] Andrew Rojas with imminent bodily injury by holding or pointing
the blade of a knife in his direction, and did then and there use or exhibit a
deadly weapon, to-wit:  a knife, that in the manner of its use or intended use
is capable of causing serious bodily injury or death, during the commission of
said assault[.]”  Similarly, the jury charge included the language “by holding
or pointing the blade of a knife in the direction of Andrew Rojas, Sr. . . . .” 
The State, citing Gollihar v. State, 46 S.W.3d 243, 257 (Tex. Crim. App.
2001), argues that any variance between the indictment and the proof resulting
from the additional language “by holding or pointing the blade of a knife in
the direction of Andrew Rojas, Sr.” was an immaterial variance.  See id;
see also Sanchez v. State, No. 13-07-00461-CR, 2009 Tex. App. LEXIS
3922, at **8–10 (Tex. App.—Corpus Christi June 4, 2009, pet. ref’d) (mem. op.)
(holding, in aggravated assault-by-threat case, that addition of “by
threatening to kill” language in indictment was an immaterial variance and
should not be included in the hypothetically correct jury charge in legal
sufficiency review).  As explained more fully below, because we find the
evidence sufficient to support appellant’s conviction, we need not address the
State’s argument.  See Tex. R.
App. P. 47.1.