**Opinion filed July 20, 2017**



## In The

# Eleventh Court of Appeals

_____

## No. 11-15-00119-CR

_____

## MARK PALOMO, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 161st District Court**
**Ector County, Texas**
**Trial Court Cause No. B-41,526**

### M E M O R A N D U M   O P I N I O N

The jury found Mark Palomo guilty of the offense of aggravated assault with a deadly weapon.[1] The jury found two enhancement paragraphs for prior felony convictions[2] to be "true" and assessed his punishment at confinement for twenty-five years. The trial court sentenced Appellant accordingly. On appeal, Appellant asserts two sufficiency-of-the-evidence issues, and he asserts in a third issue that the

---

[1]*See* TEX. PENAL CODE ANN. § 22.02(a) (West 2011).

[2]*See id.* § 12.42(d) (West Supp. 2016).

trial court erred when it instructed the jury that a knife was a deadly weapon. We affirm.

## I. *The Charged Offense*

The grand jury indicted Appellant for the offense of aggravated assault with a deadly weapon and alleged two enhancement paragraphs. The indictment charged that Appellant "intentionally, knowingly, or recklessly caused bodily injury to Luke Brown by cutting him with a knife, and [Appellant] did then and there use or exhibit a deadly weapon, to-wit: a knife, during the commission of said assault." A person commits the offense of aggravated assault with a deadly weapon if he uses or exhibits a deadly weapon during the commission of an assault. PENAL § 22.02(a)(2). Appellant pleaded not guilty and proceeded to trial.

## II. *Evidence at Trial*

Luke Anthony Brown, the victim, testified that he met Debbie Jenkins through Facebook and that he had a son about the same age as Jenkins's daughter. He thought Jenkins was unmarried, and he was with her on the night of March 23, 2012. Jenkins and the victim had planned to go to a motel that evening for a romantic liaison. The victim later learned that Jenkins had been in a relationship with Appellant for several years, but she told the victim that she had asked Appellant to leave her house.

### A. *The fight between the victim and Appellant.*

When the victim went with Jenkins to her house, Appellant came out of the house "on a mission." Appellant came to the driver's side door of the victim's Mustang, hit his fist against the window, and kicked the driver's side door. The victim said that he got out of his Mustang to defend his property. As he exited his car, he and Appellant "faced off," and Appellant swung at him; a fight then started on the sidewalk in Jenkins's front yard.

2

During the fight, the victim felt warm water on his neck; he later realized the water was blood. Appellant then picked up a board, swung it at the victim, and fled. Afterward, the victim felt a cut on his throat, but he testified that he did not see Appellant holding a knife. At the scene, the victim received emergency medical care and was also treated at the hospital and released. After the incident, Appellant apologized to the victim.

### B. Eyewitnesses to the fight.

Keishawn Pardue, who was Jenkins's son-in-law, testified that he saw the entire fight. Pardue testified that the fight began when Appellant struck the victim's car window three times and then swung at the victim after the victim exited his car. Appellant also swung a wooden board at the victim, and the victim had a lot of blood on his jersey. Pardue never saw a knife.

C.G., the fourteen-year-old daughter of Jenkins, testified that she was walking back from 7-Eleven when she heard screams close to her house and that, when she got there, Appellant and the victim were in an argument. Her brother, Brian Jenkins, tried to stop the fight between Appellant and the victim. C.G. testified that she saw Appellant move his hand to the victim's throat and slit his throat with a sharp object. The wound on the victim was about an inch from his jugular vein, and it bled "a lot." C.G. recounted that Appellant had picked up a wooden board and swung it at the victim and that she called the police. At the time of the incident, C.G. lived with her mother and her brother at the house on North Hancock. She said that Appellant also lived at the house, acted as a father figure to her, and was engaged to her mother.

### C. Police Response and Investigation

Sergio Spencer, a detective with the Odessa Police Department, testified that he responded to a disturbance on North Hancock. When he arrived, he observed that the victim had been cut on the left side of his throat and had "lots of blood across his

chest." Officer Spencer noted that it looked like, prior to his arrival, the victim's throat had been bleeding profusely. Officer Spencer explained that a sharp-edged instrument, like a knife or a box cutter, the latter of which is a razor blade, had cut the victim's throat. Officer Spencer explained that a knife and box cutter are the same and that both are capable of causing serious bodily injury or death. In his experience, Officer Spencer thought that the deadly weapon would not have been left at the scene.

Marshal Williams, an officer with the Odessa Police Department, testified that, when he arrived on scene, he observed that the victim had severe lacerations on his chest and throat, that the wounds bled profusely, and that the victim had been cut or stabbed with something. Officer Williams indicated that the location of the throat wound was very close to the jugular vein, which, if cut, could have caused death. He also testified that any sharp object could be used as a deadly weapon and could cause serious bodily injury. Officer Williams indicated that he thought there was a difference between a knife and a sharp object.

III. *Analysis*

Appellant advances three issues on appeal. We will initially address his first and second issues on sufficiency of the evidence. We will then address his third issue on alleged jury charge error.

A. *Issues One and Two: The State adduced sufficient evidence for a rational jury to find Appellant guilty beyond a reasonable doubt of the offense of aggravated assault with a deadly weapon.*

In his first and second issues, Appellant contends that there was insufficient evidence to show that he cut the victim with a knife or that he used or exhibited a knife during the offense. The standard of review for sufficiency of the evidence is whether any rational jury could have found Appellant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim.

4

App. 2007). We review the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The trier of fact may believe all, some, or none of a witness's testimony because the factfinder is the sole judge of the weight and credibility of the witnesses. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Isham v. State*, 258 S.W.3d 244, 248 (Tex. App.—Eastland 2008, pet. ref'd). We defer to the trier of fact's resolution of any conflicting inferences raised in the evidence and presume that the trier of fact resolved such conflicts in favor of the verdict. *Jackson*, 443 U.S. at 326; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Shortly after Jenkins went into her house to get some belongings, Appellant came out of Jenkins's house "on a mission," hit the car window of the victim, and kicked the car door. When the victim got out of his car, Appellant swung at him, and a fight ensued. At some point, Appellant cut the victim's throat. Other witnesses, Pardue and C.G., never saw a knife, but C.G. acknowledged that Appellant must have had a sharp object in his hand. C.G. noted that the victim was cut within an inch of his jugular vein. Officers Spencer and Williams observed that the victim had been cut on his throat and chest, had bled profusely, and was treated at the hospital. Both officers said the sharp instrument, as used, was a deadly weapon. Officer Spencer said that a knife or box cutter or razor blade were the same thing, while Officer Williams thought there was a difference between a knife and a sharp object. *See Tucker v. State*, 274 S.W.3d 688, 692 (Tex. Crim. App. 2008) (jury could infer from injuries of victim and police testimony that a two-inch folding knife or a key was a deadly weapon because it was capable of causing serious bodily injury). We note that the evidence is conflicting. The jury chose to believe Officer Spencer and the victim. Moreover, any variance between the manner and

means as alleged in the indictment—a knife—and the manner and means proved by the evidence at trial involved a non-statutory allegation that did not affect the allowable unit of prosecution; thus, the variance did not render the evidence legally insufficient to support Appellant's conviction. *See Johnson v. State*, 364 S.W.3d 292, 293 (Tex. Crim. App. 2012). After a review of the record, we hold that a rational jury could have found beyond a reasonable doubt that Appellant committed the offense of aggravated assault with a deadly weapon. We overrule Appellant's first and second issues on appeal.

B. *Issue Three: Although trial court provided an incorrect instruction in the jury charge, Appellant did not object at trial and has not suffered egregious harm.*

Appellant asserts that the trial court erred when it instructed the jury that a knife is a deadly weapon. Texas law provides that a trial court shall "deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case [and] not expressing any opinion as to the weight of the evidence." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). A trial court is required to instruct the jury on statutory defenses, affirmative defenses, and justifications when they are raised by the evidence. *Walters v. State*, 247 S.W.3d 204, 208–09 (Tex. Crim. App. 2007). We note that Appellant did not object to the jury charge at trial. We review an alleged jury charge error that the defendant did not object to at trial in two steps: we determine "(1) whether error existed in the charge; and (2) whether sufficient harm resulted from the error to compel reversal." *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). We will not reverse for charge error "unless the record shows 'egregious harm' to the defendant." *Id.*

1. *The trial court provided an erroneous instruction because a knife is not a deadly weapon per se.*

The court charged the jury as follows: "'deadly weapon' means anything that in the manner of its use or intended use is capable of causing death or serious bodily

6

injury." The charge also provided, "'Knife' means any bladed hand instrument that is capable of inflicting serious bodily injury or death by cutting or stabbing a person with the instrument. You are instructed that a knife is a deadly weapon." Appellant asserts that this is an incorrect statement of the law because a knife is not a deadly weapon per se. The State concedes that a knife is not a deadly weapon per se. We agree. The trial court's statement in the charge that "a knife is a deadly weapon" was an incorrect statement of the law because a knife is not a deadly weapon per se. *Hawkins v. State*, 605 S.W.2d 586, 588 (Tex. Crim. App. [Panel Op.] 1980).

The Court of Criminal Appeals has outlined that, "[a]lthough a knife is not a deadly weapon per se, it has been held that it can qualify as such through the manner of its use, its size and shape and its capacity to produce death or serious bodily injury." *Denham v. State*, 574 S.W.2d 129, 130 (Tex. Crim. App. 1978). To prove aggravated assault with a deadly weapon, the State was required to prove that the knife Appellant exhibited was a deadly weapon because, in the manner of its use or intended use, it was capable of causing serious bodily injury or death. *See* PENAL § 1.07(a)(17)(B); *Jackson v. State*, 913 S.W.2d 695, 697 (Tex. App.—Texarkana 1995, no pet.). Thus, it was error to charge the jury that a knife is a deadly weapon because that was an issue for the jury to decide. *See Alvarado v. State*, 317 S.W.3d 749, 752–53 (Tex. App.—Beaumont 2010, pet. ref'd).

2. *The error in the charge did not cause Appellant to suffer egregious harm.*

Because Appellant did not object to the charge at trial, we now determine if Appellant suffered egregious harm because of this error. *See Ngo*, 175 S.W.3d at 744; *Martinez v. State*, No. 11-13-00080-CR, 2015 WL 1322315, at *5 (Tex. App.—Eastland Mar. 20, 2015, pet. ref'd) (mem. op., not designated for publication); *Alvarado*, 317 S.W.3d at 750. "Errors that result in egregious harm are those that affect 'the very basis of the case,' 'deprive the defendant of a valuable right,' or

7

'vitally affect a defensive theory.'" *Ngo*, 175 S.W.3d at 750 (quoting *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)); *see Almanza v. State*, 686 S.W.2d 157, 172 (Tex. Crim. App. 1985). "[T]he actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. When we analyze whether an error caused egregious harm, we review (a) the charge itself; (b) the state of the evidence, including contested issues and the weight of the probative evidence; (c) arguments of counsel; and (d) any other relevant information revealed by the record of the trial as a whole. *Ngo*, 175 S.W.3d at 750 n.48; *see Hutch*, 922 S.W.2d at 171; *Martinez*, 2015 WL 1322315, at *5.

### a. The entire jury charge.

As we have previously explained, the trial court included an incorrect instruction that "a knife is a deadly weapon." As we review the entire charge, we have to review whether that error caused Appellant egregious harm. The trial court instructed the jury as follows in the jury chard:

> Now if you find from the evidence beyond a reasonable doubt that on or about the 23rd day of March, 2012, in Ector County, Texas, the Defendant, MARK PALOMO, did then and there intentionally, knowingly or recklessly cause bodily injury to Luke Brown by cutting him with a knife, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a knife, during the commission of said assault, as alleged in the Indictment, then you will find the Defendant guilty of Aggravated Assault as charged in the indictment.

The charge explained:

> A person commits aggravated assault if the person commits an assault . . . and uses or exhibits a deadly weapon during the commission of the assault.
> 'Bodily injury' means physical pain, illness, or any impairment or physical condition.

8

'Serious bodily injury' means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

The jury charge also provided that "'[k]nife' means any bladed hand instrument that is capable of inflicting serious bodily injury or death by cutting or stabbing a person with the instrument." For deadly weapon, the charge provided, "'Deadly weapon' means anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." The charge provided that the State had the burden to prove beyond a reasonable doubt that Appellant intentionally, knowingly, or recklessly caused bodily injury to the victim by cutting him with a knife and that Appellant exhibited or used a deadly weapon during the assault.

The charge was erroneous because it removed from the jury's consideration whether the knife, as it was used, was a deadly weapon. However, the photograph of the victim's neck and the testimony of Officers Spencer and Williams, as well as the testimony of Pardue, C.G., and the victim, indicated that the cut on the victim's neck, which bled profusely, was serious. Officer Spencer explained that a knife and a box cutter were the same thing and that the instrument, as used in this case, was a deadly weapon that could cause serious bodily injury or death. In addition, C.G. saw Appellant cut the victim's throat within an inch of the jugular vein. The jury could infer that the sharp-edged object was a bladed instrument, a knife, and that Appellant held the instrument in his hand when he cut the victim's throat and chest. *See Tucker*, 274 S.W.3d at 692. Moreover, the jury could infer that the way Appellant exhibited, wielded, and used the bladed instrument, a knife, and caused the injuries to the victim, made the knife a deadly weapon. *See id.* As the charge instructed, the jurors are the "exclusive judges of the facts proved, of the credibility of the witnesses, and the weight to be given their testimony, but the law you must be governed by you shall receive in these written instructions." Although the trial

9

court's error certainly weighs in Appellant's favor, it is not enough by itself to show egregious harm. *See Alvarado*, 317 S.W.3d at 754.

> #### b. *The probative evidence was more than sufficient to prove that Appellant committed the charged offense.*

As we previously explained, the State adduced evidence that Appellant cut the victim's throat during a fight in Jenkins's front yard. When asked if Appellant had something in his hand "sharp enough" to cut the victim's throat, C.G. responded, "Yeah." Officers Spencer and Williams noted that the victim's throat had been cut by a sharp object, a bladed instrument, which, as used, was a deadly weapon.

> #### c. *The arguments of counsel weighed both for and against harm.*

In closing arguments, the State argued that the jury could infer from the evidence presented that Appellant used a deadly weapon when he cut or slit the victim's throat and that the deadly weapon used by Appellant was capable of causing serious bodily injury or death. Later, the State repeated that the knife was a deadly weapon, an argument that focused on the trial court's erroneous instruction. The State also argued that Appellant had no justification for his assault of the victim even if the victim had a relationship with Appellant's girlfriend or wife.

Defense counsel, during its closing argument, pointed out that Appellant had been in a long-term relationship with Jenkins, was a father figure to the children, and had become upset when he learned of Jenkins's involvement with the victim. Defense counsel asserted that Appellant had simply defended himself. In addition, defense counsel argued that, without a knife presented as evidence or a witness that saw a knife in Appellant's hand, the State had failed to prove its case beyond a reasonable doubt.

Defense counsel asserted that the jury had to first decide, beyond a reasonable doubt, that what cut the victim was a knife and that Appellant used the knife as a deadly weapon. However, defense counsel also stated in closing argument,

10

"Anything close to your jugular, anything that can cut you and is right there, it is a deadly weapon. That part you know we don't know what it was, but we know it was a deadly weapon." Defense counsel further argued that:

> So they proved the deadly weapon part and they are required to, but the Judge is telling you they have to prove that whatever cut him was a deadly weapon. That is one thing they have to prove. But the Judge says they also have to prove that it was a knife. Those are your two separate things they have to prove.

Thus, defense counsel conceded that the bladed instrument was a deadly weapon, but he claimed that the State failed to produce any evidence that the bladed instrument was a knife. Defense counsel's concession militates against a conclusion in favor of egregious harm.

### d. Other relevant information did not show egregious harm.

During voir dire, the State questioned potential jurors about their ability to review the evidence and convict the defendant if the evidence proved beyond a reasonable doubt every element of the offense. The State explained the difference between assault and aggravated assault. The prosecutor also discussed that a firearm was a deadly weapon per se but that a car or pillowcase, depending on how it was used, could be a deadly weapon. The prosecutor explained the concept of self-defense and the presumption of innocence and asked the venire members whether they could consider the full range of punishment if the defendant was convicted of the charged offense.

During the defense's voir dire, Appellant's trial counsel asked about people's biases, their knowledge of the victim, their understanding of the presumption of innocence, and the level of proof required for conviction. Defense counsel inquired about whether they understood of the elements the charged offense. Defense counsel also asked if they would improperly convict Appellant because of his prior convictions, and if they could consider the full range of punishment. He requested

that the jury only use Appellant's prior convictions to evaluate his credibility, not his character. Defense counsel also spoke about community standards, the presumption of innocence, and who had the burden of proof in the case.

In opening, the State outlined for the jury that the evidence would prove that Appellant got into an altercation with the victim and then cut the victim with a bladed instrument—a knife—that caused a wound in the victim's neck that bled profusely and required medical attention. Defense counsel explained in its opening statement that Appellant acted reasonably, that no witness ever saw a knife in Appellant's hand, and that the State could not produce a knife.

### e. The record as a whole did not show that Appellant suffered egregious harm because of the charge error.

To summarize, the jury charge error weighed in Appellant's favor, as did the part of the State's closing argument that emphasized that error, as well as certain statements in opening. However, the probative evidence, the balance of opening and closing statements, and the voir dire questions weighed against egregious harm. Appellant's case is more like *Alvarado*, where the court held that there was no egregious harm where witnesses saw the defendant hold a "large kitchen knife" to his wife's head and threaten to kill her. 317 S.W.3d at 750–52. Although the knife in Appellant's case was never located, C.G. saw Appellant cut the victim and acknowledged that Appellant must have used a sharp object to do so. Officers Spencer and Williams agreed that, as used, the sharp object, which was a bladed instrument as defined in the jury charge, was capable of causing serious bodily injury or death. *See Alvarado*, 317 S.W.3d at 751–52; *see also Tucker*, 274 S.W.3d at 692. In addition, defense counsel argued in closing that "[a]nything close to your jugular, anything that can cut you and is right there, it is a deadly weapon . . . . So they proved the deadly weapon part and they are required to."

Defense counsel also argued in closing, "But the Judge says they also have to prove that it was a knife." Officer Spencer indicated that the sharp object used by Appellant was likely a knife or box cutter, which are the "same thing." Appellant claims that the court's error and the failure of anyone to say they saw a knife rises to the level of egregious error. We disagree. C.G. explained that Appellant must have used a sharp object when he cut the victim's throat. In addition, Officer Spencer explained that a sharp object like a knife or box cutter, which are bladed instruments as defined in the jury charge, was, as used by Appellant, capable of causing serious bodily injury or death.

After a review of the record, we hold that the erroneous instruction to the jury that a knife is a deadly weapon did not affect the very basis of the case, deprive Appellant of a valuable right, or vitally affect a defensive theory. *See Ngo*, 175 S.W.3d at 750; *see also Almanza*, 686 S.W.2d at 172. We conclude that the error did not cause Appellant egregious harm. We overrule Appellant's third issue on appeal.

## IV. *This Court's Ruling*

We affirm the judgment of the trial court.


MIKE WILLSON

JUSTICE


July 20, 2017

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.