

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00467-CR

---

WILLIAM PRESTON HOPPER          APPELLANT

V.

THE STATE OF TEXAS          STATE

----------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY
TRIAL COURT NO. CR12877

----------

## DISSENTING OPINION

----------

Because I believe the majority incorrectly analyzes the law and the evidence of the deadly weapon finding, I must respectfully dissent.

The indictment charged Appellant with continuous family violence against Sandra and Starla, women with whom he had dating relationships within a period of twelve months or less. He was accused of causing them bodily injury by

hitting them and by impeding their breathing and of using and exhibiting his hands as a deadly weapon.  He did not testify at trial.

Appellant expresses his second point as

> Appellant submits that there is insufficient evidence that he used a deadly weapon during the commission of the offenses in the indictment, and in the alternative, that the statute is unconstitutional in that the words "or exhibited" in relation to a defendant's hands violated the equal protection and due process clauses of the Constitution.  Appellant seeks reformation of the judgment to eliminate the affirmative finding of a deadly weapon.

The indictment charged that Appellant committed continuous family violence.  The indictment alleged that he committed the two underlying assaults "by hitting Starla . . . in the face and arms with his hands and by impeding [her] breathing with his hands; and . . . by hitting Sandra . . . in her head with [his] hands and impeding [her] breathing with his hands[.]"  The indictment further alleged that Appellant "did use or exhibit a deadly weapon during the commission of the offense, to wit:  said defendant's hands, that in the manner of [their] use or intended use [were] capable of causing death or serious bodily injury."

Section 25.11 of the penal code provides that a person commits the third-degree felony offense of continuous family violence

> if, during a period that is 12 months or less in duration, the person two or more times engages in conduct that constitutes an offense under Section 22.01(a)(1) against another person or persons whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005.[1]

---

[1]Tex. Penal Code Ann. § 25.11(a) (West 2011).

Section 22.01(a)(1) of the penal code provides that someone commits an assault by "intentionally, knowingly, or recklessly caus[ing] bodily injury to another, including the person's spouse[.]"[2] One way to commit an assault is to "intentionally, knowingly, or recklessly imped[e] the normal breathing . . . of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth."[3] Appellant was charged with using his hands both to hit the complainants and to impede their breathing.

In order for the impeding of normal breathing to rise to a use or exhibition of a deadly weapon, there must be something more. The "something more" must be found in the mind or intent of the defendant, not just additional punishment. That is, there must be evidence that Appellant intentionally, knowingly, or recklessly impeded the normal breathing of the complainant and additional evidence that when he did so, he intentionally or knowingly used his hands as a deadly weapon. It is not sufficient that the evidence show that the complainant feared the possibility of death. A complainant's subjective belief is not sufficient to prove a defendant's intent.

Although caselaw insists that it is not necessary that the evidence show that the defendant intended to cause death when he used his hands in order to support a deadly weapon finding, the evidence must show that Appellant's

---

[2]*Id.* § 22.01(a).

[3]*Id.* § 22.01(b)(2)(B), (b-1)(3).

wrongdoing in employing his hands as a deadly weapon was conscious and intentional in order to satisfy the basic principle of constitutional criminal law that "wrongdoing must be conscious to be criminal" and that a defendant must be "blameworthy in mind" before he can be found guilty.[4] The "general rule" is that a guilty mind is "a necessary element in the indictment and proof of every crime."[5]

Nonetheless, the Texas Court of Criminal Appeals and intermediate appellate courts of Texas have repeatedly brushed aside this fundamental tenet of constitutional law, repeating the mantra that "there is no additional requisite mental state attached to the aggravating element of use of the deadly weapon."[6] The Texas Court of Criminal Appeals addressed section 1.07(a)(17)(B) of the penal code in *McCain v. State*[7] and clarified its interpretation of the statute in a manner that appears to recognize the constitutional mens rea requirement:

> The provision's plain language does not require that the actor actually intend death or serious bodily injury; an object is a deadly

---

[4]*Elonis v. United States*, 135 S. Ct. 2001, 2009 (2015) (citing *Morissette v. United States*, 342 U.S. 246, 252, 72 S. Ct. 240, 244 (1952)).

[5]*United States v. Balint*, 258 U. S. 250, 251, 42 S. Ct. 301, 302 (1922).

[6]*See, e.g., Butler v. State*, 928 S.W.2d 286, 287–88 (Tex. App.—Fort Worth 1996, pet. ref'd); *Peacock v. State*, 690 S.W.2d 613, 615–16 (Tex. App.—Tyler 1985, no pet.); *Pass v. State*, 634 S.W.2d 857, 860 (Tex. App.—San Antonio 1982, pet. ref'd); *see also Walker v. State*, 897 S.W.2d 812, 814 (Tex. Crim. App. 1995); *Aaron v. State*, No. 02-12-00029-CR, 2013 WL 4507861, at *1 (Tex. App.—Fort Worth Aug. 22, 2013, pet. ref'd) (mem. op., not designated for publication).

[7]22 S.W.3d 497 (Tex. Crim. App. 2000).

4

weapon *if the actor intends a use* of the object in which it would be capable of causing death or serious bodily injury.[8]

An object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury.[9]  Sandra testified that she and Appellant had a tumultuous relationship.  He hit her and interfered with her breathing; she stabbed him in the arm and chest and pointed a firearm at him.  She testified at trial,

Q       And tell me about—what did he do with his hands, just so I understand, Sandra?

A       Put them around my throat.

Q       And then he put[—]

A       Pressure—putting pressure on my throat.

Q       And what effect did that have on you, Sandra?

A       It scared me.

Q       Why?

A       Because I couldn't breathe and I thought I was going to die.

Q       And you—you say couldn't breathe.  How long did that go on?

A       ***Only a few seconds.***

Q       ***But you said you felt like you were going to die?***

A       ***(Nods head up and down)  I didn't know he was going to stop.  I didn't know what was going to happen.***

Q       And could you see his face while he was doing this?

_____

[8]*Id.* at 503 (emphasis added).

[9]Tex. Penal Code Ann. § 1.07(17) (West Supp. 2015); *see Alvarado v. State*, 317 S.W.3d 749, 750–51 (Tex. App.—Beaumont 2010, pet. ref'd).

A Yes.

Q And tell me what his face looked like.

A Wild.  I don't know.  Mad.

Q Was he saying anything while he was doing this to you?

A Yes.  He was calling me stupid bitch and—

Q But you say that he—he let go of your neck after just a couple of seconds, right?

A Yes.

. . . .

Q All right.  Were you able to get yourself put together?

A Best I could.

Q And then what happened?

A We both cried about it.

Q What do you mean, you cried about it?

A He—he apologized, said he was sorry.

. . . .

Q . . . [D]id anything else violent happen that day?

A No.

Later in her testimony, Sandra said that her vision was "real blurry and blacking out" and that her breathing was obstructed for two or three minutes or for five or ten minutes; she could not tell.  When asked to describe what she meant by blacking out, she said that it was "like closing in all the lights, it was like closing in."

6

Although Sandra did not feel that she could breathe in during this time, she was able to breathe out. That is, she could scream, and she testified that she "scream[ed] the whole time[,]" even while she was blacking out.

Starla testified that Appellant hit her in the face and arm and put one of his hands over her mouth and nose, preventing her breathing. She estimated that his hand was over her mouth and nose off and on over a period of a minute and a half. She testified that Appellant put his arm around her neck to drag her out of his truck and to pull her back into the bedroom.

A body of law has developed that appears to hold that anything can be a deadly weapon—walls, floors, pillows, water, and body parts. Appellant points out that

> [t]he *Rocha*[10] court stated that as used the term "deadly weapon" contemplates the situation in which the defendant uses a weapon or utilizes some other object as a weapon to augment the force of his physical assault. A weapon is something with which one can "be armed," something one can pick up and use, for example: beer bottles, chairs, telephone receivers swung on a cord. The *Rocha* court stated that an increase in criminal liability occurs because the actor employed a device to assist in the criminal endeavor.
>
> A function test or use-oriented approach analysis seeks to understand if an instrument is "dangerous"; not to be used as a guide to determine if the means by which the victim was injured was an "instrument." Finding feet and hands are deadly weapons makes the defendant both the perpetrator and the deadly weapon and creates ambiguity and duplication in regard to assault and the more serious charge of aggravated assault; a defendant need only display his hands or feet to support a deadly weapon finding. The court determined that it could not give independent meaning to the term

---

[10]*United States v. Rocha*, 598 F.3d 1144 (9th Cir. 2010).

"deadly weapon" if the mere use of a body part is a deadly weapon. The court stated that every defendant could be accused of assault using a body part in some way, if the assault is made with the intent to do bodily harm, without any independent showing of the use of a "deadly weapon."[11]

Appellant also contends that "the statute's use of the words 'or exhibited' in relation to a defendant's hands violates the equal protection and due process clauses of the Constitution". Making the exhibition of a body part a means of increasing punishment is nonsensical, and I am at a loss to understand how a person exhibits a body part as a deadly weapon. Appellant's argument is both cogent and persuasive. In its recent opinion in *Elonis*, the Supreme Court of the United States explained,

> The fact that the statute does not specify any required mental state . . . does not mean that none exists. We have repeatedly held that mere omission from a criminal enactment of any mention of criminal intent should not be read as dispensing with it. This rule of construction reflects the basic principle that wrongdoing must be conscious to be criminal. As Justice Jackson explained, this principle is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. The central thought is that a defendant must be blameworthy in mind before he can be found guilty, a concept courts have expressed over time through various terms such as mens rea, scienter, malice aforethought, guilty knowledge, and the like. Although there are exceptions, the general rule is that a guilty mind is a necessary element in the indictment and proof of every crime. We therefore generally interpret criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them.

---

[11]Appellant's Brief at 29–30 (citations omitted).

8

This is not to say that a defendant must know that his conduct is illegal before he may be found guilty. The familiar maxim "ignorance of the law is no excuse" typically holds true. Instead, our cases have explained that a defendant generally must know the facts that make his conduct fit the definition of the offense, even if he does not know that those facts give rise to a crime.

. . . .

. . . Federal criminal liability generally does not turn solely on the results of an act without considering the defendant's mental state. That understanding took deep and early root in American soil and Congress left it intact here: Under Section 875(c), wrongdoing must be conscious to be criminal.[12]

Appellant was charged with and convicted of either exhibiting or using his hands as a deadly weapon. Hands are not a deadly weapon per se; rather, their character as a deadly weapon depends on the defendant's use or intended use.[13] That character may not be determined by the complainant's opinion or a reasonable person's opinion.[14] Instead, it must lie in the defendant's guilty mind.[15] The only evidence of Appellant's use of his hands as a deadly weapon is the complainants' statements that he had put pressure on their necks for a couple of seconds, a few seconds, or some undetermined length of time.

Tiffanie Dusang, a forensic nurse examiner, testified to the distinction between choking and strangling.

---

[12]135 S. Ct. at 2009, 2012 (citations and internal quotations omitted).

[13]*See* Tex. Penal Code Ann. § 1.07(17).

[14]*See Elonis*, 135 S. Ct. at 2009, 2012.

[15]*See id.*; *McCain*, 22 S.W.3d at 503; *Alvarado*, 317 S.W.3d at 750–51.

You know, the terms often get confused. But strangulation . . . is intentional external pressure on the vessels, the air passages of the neck, whereas choking is accidentally obstructing the windpipe with food, or something along those lines.

She testified that it takes about four or five minutes to strangle someone to death. It takes ten seconds to lose consciousness. She also testified that Appellant's hands were capable of causing death or serious bodily injury as he used them but that he caused neither. This conclusion, however, contradicts her testimony that it takes four or five minutes to cause death. The record does not reflect that Appellant made any effort to impede the breathing of either woman for any extended period of time. Neither woman lost consciousness.

A woman may dunk her husband's head under water while they are swimming, either playfully or in anger. But the fact that he could drown if held under the water for an extended period of time does not mean that the woman used the water as a deadly weapon. It means she dunked her husband. The fact that it is possible to beat a person to death or to kick a person to death does not mean that a person who delivers a single punch or kick, or more than one, is necessarily using his hand or foot as a deadly weapon.

The legislature created the law that resulted in the deadly weapon issue being submitted to the trier of fact. The legislature created the statute dealing with impeding the breathing of the object of family violence. Had the legislature intended every instance of impeding breathing to be a "3g"[16] offense, the

_____

[16]Tex. Code Crim. Proc. Ann. art. 42.12, § 3g (West Supp. 2015).

10

legislature was perfectly competent to write the statute in that manner.  It has not. Instead, courts have improperly and "unnecessarily invade[d] the lawmaking province of the Legislature" to rewrite the statute themselves.[17]

We should hold that, under the facts of this case and under the law as enacted by the legislature, the evidence does not support a finding that Appellant used or exhibited his hands as a deadly weapon.  Because the majority does not so hold, I must respectfully dissent.

/s/ Lee Ann Daupinot

LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED:  January 14, 2016

---

[17]*Boykin v. State*, 818 S.W.2d 782, 786 (Tex. Crim. App. 1991).

11