

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-22-00097-CR
_____

THOMAS RAY MAHON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 5th District Court
Cass County, Texas
Trial Court No. 2021F00075

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

# MEMORANDUM OPINION

A Cass County jury convicted Thomas Ray Mahon of aggravated sexual assault with a deadly weapon, a first degree felony. *See* TEX. PENAL CODE ANN. § 22.021. In accordance with the jury's assessment, the trial court sentenced Mahon to sixty-five years' imprisonment and ordered him to pay a $3,000.00 fine. On appeal,[1] Mahon argues that he was egregiously harmed by the portions of the trial court's jury charge related to the deadly weapon issue. Because we find that Mahon was not egregiously harmed by any alleged jury charge error, we affirm the trial court's judgment.

## I. The Evidence at Trial[2]

The victim in this case, Haley Clark, testified that she had been dating Mahon for some time. She described their relationship as good until a "warm" day in 2019 when "[Mahon] grabbed [her], pushed [her] up against the wall, and choked [her] . . . until [she] couldn't breathe." Clark testified that she did not call the police to report that incident because Mahon had threatened her and her three children. Clark testified that Mahon's physical abuse of her continued. According to Clark, Mahon choked her, punched her, broke things around the house, threatened to kill her while holding broken glass to her throat, and threatened to kill her children. Clark, who had never reported Mahon's acts to the police, eventually decided to leave Mahon.

---

[1]In companion causes 06-22-00096-CR, 06-22-00098-CR, and 06-22-00099-CR, Mahon appeals convictions for family violence assault by occlusion causing bodily injury and two counts of aggravated assault.

[2]Mahon filed a single brief raising the same issue in this cause, as well as in companion causes 06-22-00098-CR and 06-22-00099-CR. For judicial efficiency, we discuss the facts related to Mahon's companion causes in this opinion.

After the breakup, Clark began to consider a romantic relationship with Justin Grandmaison, who was also Mahon's friend. The incidents that gave rise to the indictment in this case and our companion causes occurred in October 2020, after Clark returned from a camping trip with Grandmaison and her children.

Clark testified that Mahon showed up at her house unannounced and, after her children were asleep, accused her and Grandmaison of "having a long, sexual relationship, which was untrue." When Clark denied the allegation, Mahon slapped her, prompting Grandmaison to urge Mahon to calm down. Mahon made Clark and Grandmaison sit on the living room couch so he could interrogate them while carrying a bone-handle hunting knife with a six-inch, fixed blade. Despite Clark's and Grandmaison's denials, Mahon refused to believe that they had not slept together. The conversation soon turned violent.

Grandmaison testified that Mahon held his knife to Clark's throat while ranting and raving. When Grandmaison told him to put down the knife, Mahon assaulted him. Clark testified that Mahon kneed Grandmaison in the face several times, held the knife to Grandmaison's throat, and sliced his face with the knife.[3] Grandmaison testified that Mahon threatened to kill him during the assault and that he feared for his life. Clark said that Grandmaison had blood everywhere, and Grandmaison testified that he fractured his nose and almost blacked out when Mahon was kicking him.

---

[3]Grandmaison said, "[Mahon] was punching, kneeing, kicking me in the head, headbutting me. He put the knife to my head at one point. I have a minor scar here where he said he was going to scalp me. He said he was gonna take my eyeball out. That's when he cut my face." In cause number 06-22-00098-CR, the State alleged Mahon "intentionally, knowingly, and recklessly cause[d] bodily injury to Justin Grandmaison by cutting him on or about his face and head with a knife, and the defendant did then and there use or exhibit a deadly weapon, namely a knife, during commission of the assault."

Clark said that, when Grandmaison stepped outside, Mahon squeezed and pushed her throat "as hard as -- towards [her] trachea" until she could not breathe and started kissing her on the side of the face while choking her.[4]  According to Clark, Mahon said that he would kill Grandmaison if she did not tell him to go away, so Clark screamed for Grandmaison to leave. Grandmaison left to get help.

Meanwhile, Clark said that Mahon held his knife to her throat and penetrated her vagina with his fingers for "thirty, forty-five minutes" without her consent.  She told Mahon, "If you're going to rape me, just rape me.  I need a break from you choking me."  According to Clark, Mahon penetrated her sexual organ with his penis while he held the knife.  Clark said she did not want to have sex with Mahon but did not try to stop him because she thought he would kill her. Clark said that, after the sex, Mahon "started beating [her] head into the cabinet doors" while holding the knife.[5]

By that time, Grandmaison had escaped to his friend's house.  His friend, John Sanders, testified that Grandmaison came to him "covered head to toe in blood" and explained what happened, which caused Sanders to call 9-1-1.  On the call, which was played for the jury without objection, Sanders told the dispatcher that Mahon had assaulted Grandmaison and was still attacking Clark with a knife.  Sanders noted Grandmaison's many injuries and took him to Atlanta Memorial Hospital for medical treatment.  Photographs of an injured and bloodied

---

[4]This act was the basis of the indictment in cause number 06-22-00096-CR.

[5]In cause number 06-22-00099-CR, the State alleged that Mahon "intentionally, knowingly, and recklessly cause[d] bodily injury to Haley Clark by hitting Haley Clark on or about her head and face with his hands, and the defendant did then and there use or exhibit a deadly weapon, namely a knife, during commission of the assault."

4

Grandmaison showed that his clothing was covered in blood and that he needed stitches and other medical treatment.[6]

Because of Sanders's call, police officers were dispatched to Clark's home. Deputy Chad Wilder arrived at Clark's house and testified that she appeared scared, complained of a headache, and had a visible knot on her head. Wilder found Mahon lying on the kitchen floor with the knife near him and arrested him. The knife, which still had blood on the blade, was admitted into evidence for the jury to inspect. Wilder also saw that there was blood throughout the scene and took photos of the bloodied carpet, couch, towels, walls, and pillow, in addition to Clark's tossed belongings.

Deputy Chris Spear testified that Mahon had no injuries but that his vest was covered in blood. Spear said that Mahon admitted the knife was his. According to Spear, Mahon said, "[A]t least I got laid before I got arrested," as he was being placed in the patrol car. Spear became concerned that Mahon had forced Clark to engage in nonconsensual acts and interviewed Clark, who said she let Mahon "do whatever he wanted to stop him from choking and beating [her]." Clark also told officers that Mahon choked her, penetrated her vagina with his fingers, and held a knife to Grandmaison. During a custodial interview played for the jury, Mahon admitted that the knife was his and that he fought with Grandmaison, who had many injuries.

After hearing this evidence, the jury found Mahon guilty of the family violence assault by occlusion, aggravated sexual assault, and two counts of aggravated assault.

---

[6]Sergeant Ernest Wade Cutchall, who questioned Sanders and Grandmaison, also described Grandmaison's multiple injuries.

5

**II. Mahon Was Not Egregiously Harmed by Any Alleged Jury-Charge Error**

The trial court provided the following definition for the term "deadly weapon" in its jury charge:

"Deadly weapon" means-

1. a firearm; or
2. anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or
3. anything actually used by the defendant in a manner making it capable of causing death or serious bodily injury; or
4. anything that the defendant intended to use in a manner that if so used would make it capable of causing death or serious bodily injury.

Mahon does not complain about this definition, which is supported by Section 1.07(a)(17) of the Texas Penal Code. Instead, Mahon complains of the trial court's omission of the definition of serious bodily injury.

Also, Mahon argues that "the Court's application section[s] . . . for the offenses of aggravated assault do[] not properly instruct the jury that it must find, beyond a reasonable doubt, . . . that [Mahon] used or exhibited a deadly weapon in the commission of an assault." In addition to other elements, those application paragraphs stated that the jury was required to find the following third element, beyond a reasonable doubt: "the defendant, during the alleged assault, used or exhibited a knife, a deadly weapon." Mahon argues that "[t]he inclusion of the descriptor 'a deadly weapon' after 'a knife' [is] an explicit statement that a knife is a deadly weapon *per se*."

### A.    Standard of Review

"We employ a two-step process in our review of alleged jury-charge error." *Murrieta v. State*, 578 S.W.3d 552, 554 (Tex. App.—Texarkana 2019, no pet.) (citing *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)). "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal." *Id.* (quoting *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.)).

"The level of harm necessary to require reversal due to jury charge error is dependent upon whether the appellant properly objected to the error." *Id.* at 555 (citing *Abdnor*, 871 S.W.2d at 732). "Here, because [Mahon] did not object to the charge, we will not reverse unless the record shows the error resulted in egregious harm." *Id.* (citing *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)).

"Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Id.* (quoting *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007)). "In making this determination, we review 'the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information in the record as a whole.'" *Id.* (quoting *Villarreal v. State*, 205 S.W.3d 103, 106 (Tex. App.—Texarkana 2006, pet. dism'd) (citing *Almanza*, 686 S.W.2d at 171)). "Direct evidence of harm is not required to establish egregious harm." *Id.* (citing *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)). However, "[a]n egregious harm determination must be based on a finding of actual rather than theoretical harm." *Arrington v. State*, 451 S.W.3d

834, 840 (Tex. Crim. App. 2015) (quoting *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)).

**B.    Analysis**

Here, we assume, without deciding, that there was error in the jury charge. *See Blanson v. State*, 107 S.W.3d 103, 105 (Tex. App.—Texarkana 2003, no pet.).  Even so, we find that Mahon was not egregiously harmed by the alleged errors.

In making our determination, we review the jury charge, state of the evidence, argument of counsel, and other relevant information. *See Murrieta*, 578 S.W.3d at 554.  In reviewing the entire jury charge, we note that the charge contained a definition of "bodily injury" and that the trial court's proper definition of the term "deadly weapon" required the jury to find that the weapon was capable of causing death or serious bodily injury.  The jury was also instructed on the lesser-included offenses of sexual assault and assault, which would not have required a deadly weapon finding, but rejected them.

Next, during argument, the State acknowledged that it had the burden to prove that the knife was a deadly weapon.  It argued that Mahon was not using the knife "to peel potatoes." The State continued, "He held it up to throats.  He was cutting [Grandmaison]."  However, the State argued that the knife was "inherently a deadly weapon," which Mahon argued "cut[] at least slightly in favor of a finding of egregious harm."  Even so, we find that the state of the evidence is the most important factor in deciding whether Mahon suffered egregious harm in this case.

8

Mahon does not argue that the evidence was insufficient to establish that the knife was a deadly weapon. Instead, his appellate brief admits that "analysis of the weight of the probative evidence would cut against a showing of egregious harm." We agree. Our review of the record shows that Mahon never suggested that his knife would not have been capable of inflicting serious bodily injury. Instead, the evidence showed that Mahon held the knife to Clark's and Grandmaison's throats while threatening to kill them and sliced Grandmaison's face, which required him to have stitches. As a result, it did not appear that the question of whether the knife was a deadly weapon was contested at trial. Consequently, the alleged charge error did not affect the very basis of the case or vitally affect Mahon's defensive theory.

Moreover, Mahon's hunting knife, which had a six-inch, fixed blade, was admitted into evidence for the jury to inspect. "[E]ven casual observation of the five-to-six-inch blade on [a] knife reveals that if wielded during an assault, the knife is capable of causing serious bodily injury or death." *Alvarado v. State*, 317 S.W.3d 749, 753 (Tex. App.—Beaumont 2010, pet. ref'd). "Because 'objects used to threaten deadly force are in fact deadly weapons[,]' a knife is a deadly weapon if its possession facilitates the commission of the underlying assaultive offense." *Id.* (alteration in original) (quoting *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000)).

In a case similar to the one here, the Beaumont Court of Appeals found that a defendant was not egregiously harmed by an instruction that a knife was a deadly weapon. In its reasoning, the Beaumont court noted that the knife was "between five and six inches in length," *id.* at 550, and wrote,

Given the physical properties of the knife at issue in this case, the knife clearly would be capable of causing serious bodily injury if it were used as an instrument of force against another person. The jury did find that [the defendant] committed an assault with the knife. By virtue of the assaultive manner of the use of the weapon, that finding necessarily included a finding that the knife was capable of causing death or serious bodily injury. Therefore, the erroneous jury charge did not deprive [the defendant] of the valuable right to have a jury finding on each element of the offense.

*Id.* at 754. We find the same reasoning applicable in this case.

We conclude that, on the facts here, Mahon has not shown actual egregious, rather than theoretical, harm. As a result, we overrule Mahon's arguments related to jury-charge error.

## III.    Conclusion

We affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted:    July 5, 2023
Date Decided:     July 6, 2023

Do Not Publish

10